HARDY, Judge.
This is an appeal by plaintiff from a judgment rejecting his demands for medical expenses alleged.to be due by defendant insurer under the terms of a policy of automobile liability insurance, providing medical expense benefits.
The case was submitted on a stipulation of counsel under the terms of which it was agreed that the accident which is the basis of the suit occurred at a point located on the map filed with the stipulation; that plaintiff incurred medical expenses as the result of the accident in the sum of $427.40 due the Hand Clinic and Hospital at Springhill, Louisiana, and that the facts in connection with the accident are reflected by three separate written statements signed by plaintiff on dates' of June 8, September 17 and November IS, 1954, respectively. The policy of insurance which was filed in connection with the stipulation is the usual form of combined automobile policy providing coverage for bodily injury and property damage liability, together with medical payments.
*521 The coverage provided by the policy agreement for the payment of medical expenses is subject to a specific exclusion relieving the insurer of payment of such expenses:
“If benefits therefor are payable under any workmen’s compensation law.”
In the instant case we are called upon to decide whether or not plaintiff would have had the right to recover against his employer, under a non-existent compensation suit, for the medical expenses incurred as the result of the accident. If plaintiff could have recovered these expenses under a compensation claim then it follows, by reason of the above quoted exclusion of coverage, that his demands in the instant suit must fail. Admittedly this situation is unusual in that it is a sort of left-handed approach to the conclusion of the issue presented.
The accident in which plaintiff was involved occurred on June 3, 1954, on which date plaintiff was employed as a Forestry Technician by the International Paper Company. On the date in question plaintiff had driven his car, which he used in connection with his employment and for the operation of which he was allowed mileage at the rate of eight cents per mile by his employer, from his home at Taylor, Arkansas, to Arkana, Arkansas, where he was engaged in inspecting timber until about 4:00 o’clock P.M. Upon quitting work plaintiff drove his automobile south from Arkana to the town of Plain Dealing where he stopped at a service station and drank a coca-cola. Re-entering his car, plaintiff drove eastward on State Highway 70 for a number of blocks through the town of Plain Dealing and then turned south on a dirt or gravel highway known as the Gleason Road and continued to travel said road for a distance of some mile and a half to two miles in a general southeasterly direction from Plain Dealing, at which point his automobile collided with another vehicle at a road intersection. Plaintiff sustained somewhat serious injuries, including numerous bone fractures and internal injuries, which necessitated the medical treatment and expenses for which he claims recovery.
The only question which is really presented in the instant case involves the application of the doctrine of deviation. It is. necessary, for us to decide whether, at the time of the accident, plaintiff was on his way to his home from work or had deviated to such extent that he could not be considered as properly being within the course of his employment.
The district judge resolved this question against plaintiff on the basis of his finding that at the time of the accident plaintiff was on his way home from work and the judge observed:
“It is my opinion that if this case had been brought under the Workmen’s Compensation Act against the International Paper Company, the plaintiff could have recovered.”
The only evidence contained in the record bearing upon the question of deviation is found in the written statements of plaintiff, as above noted, which were filed in connection with the stipulation of counsel. We quote below the pertinent portions of plaintiff’s statements:
From the statement of plaintiff, Robert F. Ruth, dated June 8, 1954:
“On June 3, 1954, I had driven my car to Arkana, Arkansas where I was inspecting some wood for worm damage and had worked there until about 4:00 P.M. I then drive (sic) my car to Plain Dealing, Louisiana and headed southeast on a dirt road and had gotten about 1 mile out of town where I approached an intersection. * * * I had never traveled this road before. I was attempting to get on the Plain Dealing-Sarepta Highway enroute to my home from my job. I could have used a shorter route back home, but the road around by Plain Dealing and Sarepta, is much better. Therefore, I was going around this route to come home. I usually drive my car to my *522 job. I am required to work at various locations and I use my car to transport me to these locations. The International Paper Company pays me 85! per mile for the mile's I put on my car while I use it to transport myself from one location on the job to another. I had gone to this place at about 7:00 A.M.' and had not gotten back to my home nor the International Paper Company when this accident happened. Í usually go directly home from the job and do not go by the company after working hours. I received a broken collar bone, four broken ribs and a broken hip plus scratches- about my body. I was carried to Hand Clinic by the Plain Dealing City Marshal. * * * ”
From the statement of plaintiff dated September 17, 1954:
“I had worked near Arkansas (sic), Arkansas inspecting some timber for worm damage. I left Arkana at about 3:30-4:00 P.M. and drove south toward Plain Dealing, La. - I stopped in Plain Dealing, Louisiana and drank a coco cola at Wingate’s Service Station. I got into my car and drove out a dirt road which is known as Gleason Road for a distance of 11/4-2 miles southeast of Plain Dealing, La. where I was involved in an accident. I was eventually going by Hand’s Clinic in Spring-hill, Louisiana to see my wife who was there-recuperating from .a recent, operation. ■ I had lots of things on my mind arid was -quite worried about my wife’s condition. My son had volunteered for the service and was about to leave for camp. All these things were on my mind, and I had just started driving in..order that I could just think: I had no particular place to go, nor did I have any particular person to see. I was planning to come by the Hand Clinic to sée my wife and this is the reason that I started around by Springhill, Louisiana. I was riding for pleasure and I. was not on the job. I considered myself off the job and on a mission of a personal nature. I have not collected any workmen’s compensation benefits, nor do I consider myself entitled to these benefits. I did collect $26.00 per week from Metropolitan Ins. Co. under a health and accident policy which we maintain through the company. In my opinion I was not on the job and I was on a mission for my own benefit. At the time I gave my statement in June, 1954, I feel that I was in such physical condition that I did not thoroughly understand all the questions asked by the adjuster who secured this statement. I repeat that I consider my trip a personal trip, and in no way was it for the benefit of International Paper Company.”
From plaintiff’s statement dated Novem ber 15, 1954:
“On June 3, 1954, I was working in Arkana, Arkansas, for International Paper Company as Forester Technician, Grade 1. On this particular day I was inspecting timber for insect damage in an area I believe to be about one-half mile northeast of Arkana, Arkansas.
“I finished inspecting the timber at approximately 3:30 P.M. After finishing work I drove my car to Plain Dealing, Louisiana, on Louisiana Highway 1# 10, where I drank a coke at Wingates Service Station. After drinking the coke I drovfe through Plain Dealing— driving east and after getting through most of the town, I turned right on a gravel road which I think is called 'Gleason Rd. After driving about a mile and one-half on -this road and after the road had veered back east, I came to a cross road where Gleason Rd. crosses the Rocky Mount Highway which runs in a southerly direction. * t-
“I did not have any business or work to do for International Paper Company down Gleason Road. I have never worked for International Paper Company in or around Gleason Road. To *523 the best of my knowledge, I do not know any person living on Gleason Road. I do not think International Paper Company owns any timber on or near Gleason Road. I was not sent down Gleason Road by any authorized person or employee of International Paper Company. I was not drinking, nor was I meeting any person for any reason on this particular road. As I have told that Adjuster several times before, I was driving down that road, not on business for International Paper Company, but so as to ponder my troubles' — which were at this time a sick wife in Hand’s Clinic in Springhill and the entrance of my son into the armed services. As a matter of fact, when I left Wingates Service Station in Plain Dealing, I planned to come on to Springhill to see my wife at the Clinic and then on the spur of the moment I turned off on the Gleason Road to drive and think.
“I live in the Welcome Community in Arkansas, which is about fifteen miles east of Arkana, Arkansas. Had I wanted to go home when I finished work at Arkana the day of the accident, I would have traveled east on the C. C. Road and saved all of the extra driving.
“The job I have with International Paper Company does not require my presence at the plant in Cullen, Louisiana. I get my daily instructions at an equipment shed near Taylor, Arkansas. I do not make a report to International Paper Company in the evening.”
The record contains no evidence of any kind as to the circumstances attending the making and signing of plaintiff’s several statements. However, relying upon a statement in brief of plaintiff’s counsel which is not challenged by counsel for defendant, we feel justified in the assumption that the first two statements, dated respectively June 8th and September 17th, were made to defendant’s adjuster, while the statement of November 15th was given to plaintiff’s counsel. The only statement which bears the attestation of witnesses is the one of September 17th. We think it further pertinent to observe that plaintiff’s first statement, which was given over his signature without the formality of witnesses, was made on the 5th day following the accident, at a time when it is reasonable to assume plaintiff was still suffering from the effects, including shock, of his injuries, which are itemized in a notation accompanying the bill from the Hand Clinic, as follows:
“(1). Fractured left clavicle.
(2). “ 4, 5, 6, 7th left ribs, anterior.
(3). Simple fracture greater wing of left ileum.
(4), Internal abdominal injury.”
In his written opinion our learned brother of the district court disposed of the conflict between plaintiff’s statements and his explanation of his purpose in being on the Gleason Road as follows:
“The plaintiff’s explanation for taking such a route was that he was troubled and heavy burdened with personal problems and that he merely drove this added distance in order to ponder on some of these problems. This explanation of the plaintiff was not made at the time that he made his first statement and, in this connection, the Court is not impressed with his personal explanation of why he was on the gravel road. In any event, the plaintiff was on his way home from his employment and he was being paid eight cents (8‡) per mile and I am of the opinion that it would be a strained interpretation of the Louisiana Workmen’s Compensation Law to demand that he take the shortest and best route, in order to come within its provision.”
While we concur with the district judge on the general proposition that the compensation statute does not demand that *524 an employee take the shortest and best route, we think it equally well established that the circumstances of a case involving the question of deviation must indicate that an employee was traversing a reasonable route from his place of employment to his home.
Examining the facts of the instant case as to location, with particular reference to the map of the general area which is incorporated in the record, and in the light of further reference to standard maps of the North Louisiana-South Arkansas area in the vicinity, we think the conclusion that at the time of the occurrence of the accident on the Gleason Road plaintiff was returning home from his work by any reasonable route is entirely unwarranted.
The town or community of Arkana is located, as its name implies, on the Arkansas-Louisiana border; Taylor, Arkansas, in the immediate vicinity of which plaintiff’s home was located, is approximately fifteen miles a little north of due east from Ar-kana; Plain Dealing, Louisiana is located about eight miles almost due south of Ar-kana, Arkansas, which communities are linked by State Highway No. 10. At Plain Dealing Highway 70 intersects Highway 10 and runs practically due east to Sarepta, Louisiana, a distance of fourteen miles. Highway 90 connects the town of Sarepta with that of Springhill, Louisiana, which is eight miles to the north. Taylor, Arkansas is located on State Highway 90, another eight miles north of Springhill. All of the above numbered highways are paved or hard surfaced. Plaintiff was injured at a point on the Gleason Road which is obviously a secondary thoroughfare, either graveled or dirt, at a point some mile and a half to two miles southeast of Plain Dealing. We show below a sketch drawn approximately to scale illustrating the locations of the towns and the highways and showing, as the point “X”, the place of collision in which plaintiff sustained his injuries:

*525 Counsel for defendant has emphasized the declaration of plaintiff in his first statement of June 8th to the effect that he was on his way home at the time of the accident, and this view was adopted by the trial judge. In our opinion the statement is not entitled to the weight which has been accorded, and the recitals of plaintiff’s signed declaration are, in themselves, so inconsistent as to convince us that plaintiff’s reasoning was confused to such extent that it should not be accepted as determinative, particularly in the light of his subsequent and more rationally developed declarations. For example, we note the statement that he had never traveled the Gleason Road before and that he was “attempting to get on the Plain Dealing-Sarepta Highway en route to my home from my job.” The facts completely controvert the reliability of such an expressed intention, because plaintiff was on the Plain Dealing-Sarepta Highway traveling on Highway 70 eastward toward Sarepta for some distance through the town of Plain Dealing before he turned south onto the Gleason Road, which, insofar as we can determine from the record and the map, led nowhere, not even in a general direction towards plaintiff’s home.
One of the elements in connection with deviation is found in the intention of the employee or, as it has been expressed, “the mental purpose of the employee.” 14 T.L.R. 72; Warnick v. Louisiana Highway Commission, La.App., 4 So.2d 607; Braud v. Vinet, La.App., 5 So.2d 200; Williamson v. De Soto Wholesale Grocery Co., La.App., 16 So.2d 739; Sun Underwriters Ins. Co. v. Standard Accident Ins. Co., La.App., 47 So.2d 133; Rhea v. Farrington, La.App., 78 So.2d 47.
In the instant case plaintiff’s purpose was either to return home, as is contended on behalf of defendant, or to drive aimlessly without a fixed destination for the purpose of cogitating upon his personal problems, as is urged on behalf of plaintiff. From the somewhat meager facts it is not only evident that plaintiff at the time of the accident was not traveling the shortest and most direct route to his home but, as a matter of fact, he was not traveling on any route which reasonably could be interpreted as leading to his home. This constitutes a physical circumstance which, in our opinion, is of itself conclusive. But there are other considerations of a somewhat imponderable nature which indicate the correctness of the same conclusion. These factors are found in plaintiff’s twice iterated declaration, once in a statement to defendant’s adjuster signed in the presence of attesting witnesses and, again, in a statement of fact made to his counsel. As opposed to these declarations defendant asserts the single instance of a declaration made on the Sth day after plaintiff had sustained serious physical injuries, which statement, in itself, evidences an inconsistency and lack of coherence. Finally, we are impressed with the further fact that plaintiff was confronted with a choice of prosecuting a compensation claim which would have produced, if successful, the same result here sought, or of proceeding, as he elected to do, by an action against his insurer for medical expenses. This election, we think, is a substantial element in support of the validity of plaintiff’s intention of deviating from the course of his employment. In his own mind plaintiff must have been convinced of the ultimate fact that he had deviated from his employment for personal reasons else he would not have brought this action in preference to a suit for compensation.
For the reasons assigned the judgment appealed from is reversed and set aside and judgment is now rendered in favor of plaintiff, Robert F. Ruth, and against the defendant, Royal Indemnity Company, a New York corporation, in the full sum of $427.40, with interest at the rate of 5% per annum from date of judicial demand until paid, together with all costs.