159 So.2d 782 (1964)
Gladys SWEET, Plaintiff and Appellee,
v.
Paul N. TRAHAN and Fidelity & Casualty Company of New York, Defendant and Appellant.
No. 1035.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1964.
Rehearing Denied February 6, 1964.
Plauche & Stockwell, by Fred H. Sievert, Jr., Lake Charles, for defendant-appellant.
Francis E. Mire, Lake Charles, for plaintiff-appellee.
Paul N. Trahan, Jennings, in pro per.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a tort action arising out of an automobile collision at an intersection in the city of Lake Charles, Louisiana, on the night of October 4, 1961. Plaintiffs were occupants of a Buick automobile being driven by Norfolk Love. The other vehicle was being driven by the defendant, Paul Trahan, assistant manager of the Jennings Branch of the Calcasieu-Marine National Bank. *783 The defendant, Fidelity & Casualty Company of New York was sued as the automobile liability insurer of the bank. A jury in the lower court rendered judgment against both defendants. The Fidelity & Casualty Company of New York has appealed. The defendant Trahan did not appeal. Plaintiffs have answered the appeal seeking increases in the awards.
The evidence clearly shows that the sole cause of the accident was the negligence of Paul N. Trahan in running a red traffic signal light. This defendant did not appeal and the lower court judgment is now final as to him.
The sole issue on appeal is whether Trahan, at the time of the accident, was covered by the liability policy issued by the defendant insurer to the bank. The defendant insurer makes two coverage defenses: (1) The policy provides (Employers Non-Ownership Liability endorsement, Par. 2, (b)) that coverage is extended to persons driving non-owned automobiles while being used "* * * in the business of the named insured * * *" Defendant contends this was Trahan's own automobile and that it was not being driven in furtherance of the bank's business. (2) Alternatively, the defendant insurer contends that coverage to Trahan was excluded under a provision of the policy excluding executive officers of the bank while operating their own automobile.
The facts show that Paul Trahan lived in Jennings, Louisiana where he was the assistant manager of the Jennings Branch of the Calcasieu-Marine National Bank. On October 4, 1961 the Southwest Louisiana Clearing House Association was having its annual meeting in Lake Charles. Mr. Colon, executive vice president of Calcasieu-Marine National Bank, explained that there are five clearing house associations in the State of Louisiana, each embracing a certain area, and that they actually are parts of the Louisiana Bankers Association. This particular meeting on October 5, consisted of a "business session" beginning at 4:00 p. m. at the American Legion Home, followed by a cocktail party and dinner dance at the National Guard Armory. The bank paid the small registration fee for any of its employees who desired to attend but the employees had to pay any other expenses incurred. Attendance was not required and, according to Mr. Colon's testimony, was not even encouraged because it was principally a social gathering.
Paul Trahan drove in his own automobile from Jennings to Lake Charles and attended the business session and the dinner dance, which ended about 11 o'clock. When the dance ended, several of those present decided to go to Bevo's, a nightclub in Lake Charles, to drink and dance. Trahan drove his own car and took Mrs. Edith Viccellio, whom he had known for many years as a co-employee of the Calcasieu-Marine National Bank. At Bevo's there were other employees of Calcasieu-Marine as well as of other banks. Mr. Trahan and Mrs. Viccellio stayed at Bevo's only long enough to have one drink and then Mrs. Viccellio, who had become very sleepy, asked Mr. Trahan to take her home. It was while Mr. Trahan was driving west on Broad Street enroute to Mrs. Viccellio's home, a direction directly opposite to that which he would have taken to return to his own home in Jennings, that the accident occurred.
The defendant insurer contends first that Paul Trahan was not at any time during the afternoon or evening of October 4, 1961 acting in the course and scope of his employment or in furtherance of his employer's business. Defendant contends further that, even if we assume Trahan was acting in the course of his employment in attending the business session and dinner dance, when the dance ended and they went to Bevo's, Trahan was no longer doing anything in the service of his employer, but instead was engaged in a purely personal mission, i. e., to have an additional drink or two. Finally, the defendant insurer contends that certainly when Trahan left Bevo's and drove in a direction opposite to *784 that which he would take to return to Jennings, he deviated from whatever service he might have been performing for his employer and was engaged in the purely personal mission of taking Mrs. Viccellio to her home.
In Louisiana the doctrine of respondeat superior is set forth in LSA-C.C. Articles 176, 2317 and 2320, the latter of which states that "* * * employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed. * * *"
As has been stated many times in the jurisprudence and by textbook writers, there is no precise rule or definition by which we can determine in every instance whether the employee driver of a motor vehicle is acting within the scope of his employment. Each case must be decided largely on its own facts, keeping in mind the basic idea that the use of the vehicle at the time must have been in the service of the employer or while about the employer's business. Blashfield's Cyclopedia of Automobile Law & Practice, Permanent Edition, Vol. 5, page 130, Sec. 3006; 35 Am. Jur. 986, Verbo, Master & Servant, Sec. 553. Some of the main factors which have been taken into consideration by the courts are as follows:
In McAllister v. Jackson Brewing Co., 6 So.2d 179 (Orleans Appeal 1942) the court emphasized the fact that a brewing company salesman was required to use his own automobile, to attend a sales meeting and barbecue, and that his travel expenses were paid by his employer.
In Hardware Mutual Casualty Company v. Standard Coffee Company, 2 So.2d 89 (Orleans App.1941) the employee was driving in his own automobile to meet another salesman over whose route the two were going to drive in a company truck. The court stressed the factor of control, i. e., did the employer exercise any control over the method of transportation which the employee would use or was he free to travel by any means he desired?
In O'Brien v. Traders & General Ins. Co., 136 So.2d 852 (1st Cir.App.1961) a parish argiculture agent in Winnsboro, Louisiana was driving his own automobile to Baton Rouge on a week end to attend a meeting of the Agricultural Extension Service. The court stressed the fact that at the time of the accident he was driving toward Baton Rouge, despite an earlier diversion to spend the night with his mother-in-law, as well as the fact that he was required to attend the meeting and he was allowed mileage for the trip.
In Ruth v. Royal Indemnity Co., 83 So.2d 520 (2nd Cir.App.1955) a forester was returning after work, from Arkana, Arkansas to Taylor, Arkansas, but in doing so went 10 or 15 miles out of his way. The court stressed the factor of the intention of the employee, i. e., the mental purpose which he had in mind. Was the employee's mental purpose to perform some service connected with this employment or was it to pursue some purpose of his own?
In Bordelon v. Great American Indemnity Co., 124 So.2d 634 (3rd Cir.App. 1960) an office boy for a newspaper company, whose duties included assisting the regular carriers to deliver their papers, was driving an automobile to help a boy whose bicycle had broken. There was a company rule forbidding a delivery boy under the age of 16 from using a motor vehicle to deliver papers and the office boy was admittedly violating this rule. The court laid stress on the fact that, even though the driver of the automobile was violating his employer's instructions, he was carrying out the work which he had been employed to do and was performing a service for his employer.
In Wills v. Correge, 148 So.2d 822 (4th Cir.App.1963, Writ of Certiorari Denied) the court stressed the well established general rule that an employee going to or from his place of employment is not acting in the course of his employment. The court held *785 that a salesman, who used his own car to call on customers, was no longer under his employer's control or serving his master's business, where he had completed his day's work and was on his way home.
In Rhea v. Farrington, 78 So.2d 47 (2nd Cir.App.1955, Writ of Certiorari Denied) the court quoted the deviation concept from Braud v. Vinet, 5 So.2d 200, as follows:
"`But it is a rule well established by jurisprudence that even though the employee may not have finished the task he was engaged in or may not yet have returned to the base from which the task began, if during the course of the performance of the task he deviates momentarily to go on some mission of his own or to do something that is not connected with his work, and it is during the course of such deviation that through his fault damage is caused to someone, he will be held to have been outside of and beyond the course and scope of his employment and his employer is not answerable.'"
In Cado v. Many, La.App., 180 So. 185 a delivery boy was riding a bicycle belonging to his employer, while on his way home to lunch. The bicycle struck and injured a small child. In finding that the employee was not acting in the course of his employment, the court stressed the fact that the bicycle had not been furnished in order that the employee could more quickly return to work or for any other purpose which would be of service to the employer.
In Cox v. Shreveport Packing Co., La. App., 28 So.2d 617 the employee was a cattle buyer for a packing company. The employer furnished him an automobile and gasoline. On the day of the accident, at the conclusion of a cattle auction, the employee was taking a friend home. The court held that taking a friend home was a private mission, not of any service to the employer, and that hence the employee had deviated from the course and scope of his employment at the time of the accident.
In Graffagnini v. George Engine Co., La. App., 45 So.2d 412 two co-employees had gone from New Orleans to Lockport, Louisiana to conduct certain business for their employer. On the return trip to New Orleans, one of the employees became ill so they stopped at a restaurant and "checked out" by telling the assistant sales manager they had returned. Then the employee was driving his sick co-employee home when the accident occurred. The court held the driver was no longer acting in the course of his employment and it was of no benefit or service to the employer that a sick employee was being returned to his home after working hours.
In 35 Am.Jur. 986, Verbo Master and Servant, Sec. 553, we find the following summary of factors to consider in determining whether an employee is acting in the scope of his employment:
"Among the many factors to be taken into consideration may be mentioned the employer's ownership of the instrumentality by means of which the employee inflicted the injury and the fact that it was furnished to the employee by the employer, although the mere intrusting of an instrumentality to the employee by means of which he commits a tort is not of itself, unless the instrumentality is one classed as a dangerous instrumentality, sufficient to establish vicarious liability. Other factors to be considered are the time at which the wrongful act was done whether at a time when the employee was not obligated to perform any duty for the employer, in which case the latter is not ordinarily to be held responsiblethe place at which the wrongful act was done, the purpose of the act, the personal motive of the employee, whether the act is one commonly or usually done by employees engaged in similar capacities, or whether the employer had reason to expect that an act of the character complained of would be committed by the employee."
*786 In the light of the above authorities, let us examine the facts of the present case. Mr. Trahan was not required to attend this meeting. The bank paid his registration fee, but he had to pay any other costs involved. The bank did not exercise any control whatsoever over the method of transportation used by Mr. Trahan to attend the meeting. He was not furnished an automobile, nor were his travel expenses paid. The time was after working hours, particularly the dinner dance and the subsequent visit to Bevo's. Even if we assume that the bank received some benefit, as a matter of public relations, from Mr. Trahan's attendance at the business session and the dinner dance, it is not shown that the bank received any benefit whatever from the visit to Bevo's or the subsequent taking of Mrs. Viccellio to her home, nor is it shown that Mr. Trahan intended to perform any service of benefit to the bank. Some of the other persons who had gone to the clearing house meeting were at Bevo's when Mr. Trahan arrived, but it is not shown that he talked to any of them about banking business or that he did anything which might assist his employer's public relations. Mr. Trahan testified he stood at the bar and had one drink and then left. The mere fact that Mr. Trahan was taking to her home an employee of the bank, cannot be said to have been of any service to the bank or in furtherance of Trahan's employment or of the bank's business. It was simply a courtesy motivated by personal friendship. Mr. Trahan had not been directed or required to take her home, nor was it reasonably necessary or incidental to his employment, or to his attendance at the clearing house meeting. It was purely a personal mission, for which the bank was not responsible.
For the reasons assigned, the judgment appealed is reversed and set aside insofar as it casts the defendant, The Fidelity & Casualty Company of New York. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant, The Fidelity & Casualty Company of New York, rejecting plaintiff's demands against it, at plaintiff's cost. Judgment in favor of the plaintiff and against the defendant, Paul N. Trahan, was not appealed and therefore remains in effect. All costs of this appeal are assessed against the plaintiff.
Reversed and rendered.

On Application for Rehearing
En Banc. Rehearing denied.