CHASEZ, Judge.
This appeal involves the cause of action filed by Mrs. Miriam Primo, wife of/and Archie McConnell, against the Travelers Indemnity Company and Employers Casualty Company of Dallas, No. 57-910 of the Twenty-Fourth Judicial District Court for the Parish of Jefferson; the cause of action of the Employers Casualty Company against the Travelers Insurance Company, No. 58-374 of the docket of the Twenty-Fourth Judicial District Court for the Parish of Jefferson; and the cause of action of James H. Clayton against the Travelers Indemnity Company and Employers Casualty Company of Dallas, No. 63-250 of the docket of the Twenty-Fourth Judicial District Court of the Parish of Jefferson.
*344 Since each suit grew out of the same accident and involved the same facts they were consolidated for trial in the District Court with the stipulation that separate judgments be rendered in each case. They have likewise been consolidated for the purpose of this appeal.
For a complete understanding of the actions involved the basic facts are:
Mr. Joseph Montaldo, President of Montaldo Insurance Agency, Inc., delivered a 1960 Thunderbird owned by Montaldo Insurance Agency, Inc., to Giblin’s Auto Service, Inc., for repairs, more specifically to find a “hum” within the motor. Delivery was made in the morning of June 16, 1960. Giblin’s Auto Service, Inc., did not have an opportunity to repair the car during the day, therefore, its President, Thomas Giblin, drove the car to his home, road testing it during the drive. Mr. and Mrs. Giblin were going to a political rally at Brunigs that night and the Thunderbird, owned by Montaldo Insurance Agency, Inc., was used as transportation in lieu of Mr. Giblin’s personal car. Upon arriving at the Brunigs, Mr. and Mrs. Giblin met Mr. Montaldo and his date. At the end of the rally it was decided that the two couples would go to a local restaurant for dinner. The group proceeded in the Montaldo automobile, with Mr. Giblin driving, to Irwin’s Restaurant, where they had a couple of drinks and dinner. After dinner, Mr. and Mrs. Giblin drove Mr. Montaldo to his home in the Warwick Apartments, then proceeded to their home in the Montaldo automobile. After having coffee with Mrs. Giblin, Mr. Giblin decided to go to the Fair Vue Lounge on Causeway Boulevard to have a few more drinks. He drove there alone in the Montaldo automobile. After arriving at the Fair Vue Lounge and having a drink with Mr. James H. Clayton, 'Archie McConnell, the bartender, and Mrs. Archie McConnell, Mr. Giblin persuaded the three to drive to the 809 Club in the French Quarter with him. Mr. Giblin and the three above named persons got into the Montaldo automobile and proceeded in the direction of downtown New Orleans on Causeway Boulevard. When Mr. Giblin reached and was driving on the overpass located at Causeway Boulevard and Highway No. 61, at an excessive rate of speed, he lost control of the automobile and an accident resulted in which all parties were injured. As stated above, the following actions, which are consolidated for this appeal, ensued.
Mr. and Mrs. Archie McConnell sued for the personal injuries sustained by Mrs. McConnell and the medical expenses incurred. The claim of Mr. McConnell for medical expenses was subsequently dismissed with prejudice on his motion. Joined as defendants were Travelers Indemnity Company and Employers Casualty Company of Dallas. Travelers Indemnity Company had a garage liability policy issued to Giblin’s Auto Service, Inc., and Employers Casualty Company had an automobile liability policy issued to Montaldo Insurance Agency, Inc., covering the I960 Thunderbird.
James H. Clayton brought a companion action against Travelers Indemnity Company and Employers Casualty Company of Dallas for the injuries he sustained in the accident.
Employers Casualty Company brought suit against Travelers Insurance Company for the property damage which had been caused to the Thunderbird. Employers Casualty Company of Dallas was subrogated to the claim of the Montaldo Insurance Agency, Inc., in the amount of $1,359.93 after paying this sum under the collision coverage of the automobile liability policy covering the Montaldo automobile.
In the two suits for personal injuries the trial court rendered judgment in favor of the plaintiffs, Mrs. McConnell and Mr. Clayton against Travelers Indemnity Company under the garage liability policy, and against the plaintiffs and in favor of Employers Casualty Company. In the suit of Employers Casualty Company - for the property damage sustained by the automo *345 bile, judgment was rendered against Travelers Insurance Company and in favor of Employers Casualty Company.
From all three of the judgments rendered below, Travelers has taken a- sus-pensive appeal. The plaintiff, Mrs. McConnell and Mr. Clayton in their suits have taken a devolutive appeal praying for judgment against Employers Casualty Company if the judgment against Travelers is reversed, and asking for an increase in quantum.
The issues presented to this Court are: 1) Which defendant, if any, is liable for the personal injuries sustained by Mrs. McConnell and Mr. Clayton, since both Travelers and Employers Casualty Company contend that there is no coverage under the policies issued by them; 2) Whether Travelers is liable to Employers for the property damage done to the automobile owned by Montaldo Insurance Agency, Inc., and 3) Whether the quantum awarded plaintiff should be increased if the awards of the Court a qua are affirmed.
LIABILITY OF TRAVELERS UNDER THE GARAGE LIABILITY POLICY FOR THE PERSONAL INJURIES SUSTAINED BY MRS. McConnell and mr. clayton.
The trial judge held that the accident was caused solely through the fault and negligence of Thomas Giblin, with which we wholeheartedly agree. In fact, the negligence of Thomas Giblin is not contested in this Court by any of the parties. The trial court held Travelers liable to ■the plaintiffs for the reason that once the ■coverage of the policy attached upon delivery of the automobile to Giblin’s Auto Service, Inc., it continued to apply until possession was returned to the owner, or nature of the custody was changed. We .are of the opinion that the trial court ■erred in this part of its judgment.
The garage liability policy was issued to Giblin’s Auto Service, Inc., and not to Mr. Giblin personally. The pertinent provisions of the policy follow:
“DEFINITIONS OF HAZARDS
“Division 1 — Premises—Operations— Automobiles
“The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations, and (2) any automobile owned by the named insured in connection with the above defined operations for the use of the named insured, a partner therein, an executive officer thereof, or a member of the household of any such person.
“Division 2 — Premises—Operations— Automobiles Not Owned or Hired
“The ownership, maintenance or use of the premises for the purpose of an automobile repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the use in connection with the above defined operations of any automobile not owned or hired by the named insured, a partner therein or a member of the household of any such person.”
Travelers contend that the above quoted stipulations from the policy provides coverage for an automobile not owned by the named insured only when being used in connection with the business of Giblin’s Auto Service, Inc. With this contention we agree. Furthermore, for liability to be imposed on Travelers under this fact sitúa *346 tion their insured, Giblin’s Auto Service, Inc., must also be bound for the damages sustained by the plaintiffs.
In the case of Hutto v. Arbour, 4 So.2d 84 (La.App.1941), the action was for damages arising out of an automobile collision when a wrecker truck collided with the plaintiff’s vehicle. The driver of the vehicle, his employer and garage liability insurer, and a third person who sent the driver of the vehicle on the mission when the accident occurred were joined as defendants. The defense of the employer motor company and its insurer was that the driver was the borrowed servant of a third person thus not in the course and scope of his employment. The Court held that the driver of the vehicle was not in the scope and course of his employment and the garage liability policy did not provide coverage. The Court stated:
“The motor company not being liable for the acts of Arbour, its insurer is also not liable under the clear provisions of the policy, as the acts of Arbour were not in connection with the operation by the motor company of its business of automobile dealer and repair shop, nor in any matter incidental thereto or connected therewith. As to these two defendants, the judgment will have to be reversed and the suit of all plaintiffs dismissed.”
This rationale has application to the case at bar. If Mr. Giblin was not within the course and scope of his employment, Gib-lin’s Auto Service, Inc., can not be held liable for his tort; likewise, neither can the defendant insurer, Travelers.
 There is no precise rule or definition by which it can be determined in every instance whether the driver of a motor vehicle is acting in the course and scope of his employment. Each case must be decided on its own facts, keeping in mind the basic idea that the use of the vehicle at the time must have been in the service of the employer or while about the employer’s business. Sweet v. Trahan, 159 So.2d 782 (La.App.1964). In this case since Giblin was not in an automobile owned by Giblin’s Auto Service, Inc., and not on a trip directly concerned with the business, his mental intention will be the controlling factor in determining whether he was in the course and scope of his employment. Ruth v. Royal Indemnity Company, 83 So.2d 520 (La.App.1955). If at the time of the accident it was Giblin’s intention to road test the automobile he would be using it in-service of or in connection with the business of Giblin’s Auto Service, Inc. If he did not have an intention to road test the car,, we can not conceive of any other fact that would bring him within the course and scope of his employment.
The evidence indicates that Mr. Giblin drove the Montaldo automobile to his home originally to road test it. Whether he had road testing in mind when he took the automobile to go to Brunigs is in conflict. At one point he stated that it was merely a matter of convenience and at another point he stated that it was his purpose and intention to road test the car. However, his testimony clearly indicates that when he left his home at 2:00 a. m., and drove the car to Fair Vue Lounge for the purpose of getting more to drink and afterward when he was going to the 809 Club in the French Quarter, he had no intention of road testing the car at all. He testified as follows:
“Q. And you drove the Thunderbird to the Fair-Vue Lounge?
“A. Yes.
“Q. Was your purpose in going out of the house at that time of night to road test the car or was it to go to the Fair-Vue Lounge for a couple of more drinks?
“A. To go to the Fair-Vue Lounge.
“Q. And you didn’t have any thought of road testing this car then, did you?
*347 "‘A. No, I didn’t
“Q. You don’t road test cars at two o’clock in the morning do you?
“A. No.”
******
"Q. As a matter of fact, you were not road testing the automobile at the time the accident took place?
“A. No, I don’t believe.
“Q. As a matter of fact, there was no connection at all between your business and going to the French Quarter, the 809 Club?
■“A. No.
X‘Q. There was no connection at all between your operation of a garage and maintenance shop and going to the French Quarter at 3:30 in the morning, was there?
■“A. No.”
The logical conclusion from this testimony is that Giblin converted the car to his personal use and could in no manner be within the course and scope of his employment or using the automobile in connection with the business of Giblin’s Auto Service, Inc. For this reason the Travelers’ garage liability policy did not extend coverage to the personal injuries of Mrs. McConnell and Mr. Clayton. Thus, the judgment of the trial Court in favor of Mrs. McConnell and Mr. Clayton against Travelers must be reversed.
LIABILITY OF EMPLOYERS CASUALTY COMPANY UNDER THE AUTOMOBILE LIABILITY POLICY FOR PERSONAL INJURIES OF MRS. McCONNELL AND MR. CLAYTON.
The pertinent provisions of the policy issued to Montaldo Insurance Agency, Inc., by Employers Casualty Company are:
“HI Definition of Insured.
“(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word ‘Insured’ includes the Named Insured and, if the Named Insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or such spouse or with the permission of either. The insurance with respect to any person or organization other than the Named Insured or such spouse does not apply:
“(1) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof, but this provision does not apply to a resident of the same household as the Named Insured, to a partnership in which such resident or the Named Insured is a partner, or to any partner, agent or employee of such resident or partnership.”
Employers Casualty Company contends that under the above quoted provisions of its policy it is not liable to the plaintiffs since there is no coverage afforded when the automobile is used by a repairman. We shall first discuss whether coverage attached upon delivery of the Montaldo automobile to Giblin’s Auto Service, Inc.
The above exclusion negates application of the omnibus clause to any person, organization, or to any agent or employee thereof, operating a repair shop with respect to any accident arising out of the operation thereof. Thus when Mr. Mon-taldo gave Giblin’s Auto Service, Inc., implied permission to road test the auto during the course of repairs, the repair shop or *348 its agent did not become an additional insured within the meaning of the omnibus clause, Nyman v. Monteleone-Iberville Garage, 211 La. 375, 30 So.2d 123 (1947); Clostio’s Heirs v. Sinclair Refining Co., 36 So.2d 283 (La.App.1948). See also annotation 47 A.L.R.2d 556. There is nothing in the record to indicate that Mr. Montaldo delivered his automobile to Giblin’s Auto Service, Inc., for any other purpose than the making of repairs; furthermore, he did not give Mr. Giblin express or implied consent to use the car for his personal use.
The next problem which is presented is, since the accident occurred while Mr. Giblin was on a personal deviation and not in the course or scope of his employment, was the accident arising out of the operation of the repair shop? It would be an anomaly to state that the omnibus clause did not provide coverage while the car was being road tested but did so once the driver went outside of his scope of employment and on a personal mission. Furthermore, coverage could not attach when Mr. Giblin converted the automobile to his personal use for the simple reason that when Mr. Montaldo delivered the car to Giblin’s Auto Service, Inc., he did not give Mr. Giblin permission to use the car personally but only implied permission to road test the car. By the exclusion in the policy, quoted above, the omnibus clause did not extend coverage to road testing. Likewise, the omnibus clause could not extend coverage to the personal use of the automobile by an agent or employee of Giblin’s Auto Service, Inc., for permission 'for personal use was not actually or impliedly given at delivery of the automobile. Therefore, since coverage, did not initially attach there could be no coverage for an unauthorized or unintended purpose. We are aware of the cases which state that once coverage attaches, it remains even though the liability arises out of a subsequent use for an unauthorized or unintended purpose. See Parks v. Hall, 189 La. 849, 181 So. 191 (1938); Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746 (1949); Dominquez v. American Casualty Co., 217 La. 487, 46 So.2d 744 (1950). However, for this rule to have application there must be initial permission to use the automobile that results-in coverage under the omnibus clause. In the foregoing cases permission was given, for use of the vehicle which resulted in coverage attaching initially. In this case, implied permission was given initially for Giblin’s Auto Service, Inc., to road test the car. Road testing the automobile would come under the specific exclusion in the policy and coverage would not attach. In other words, an employee of Giblin’s Auto-Service, Inc., would not become an additional insured under the omnibus clause-while road testing the automobile. Since-initially no coverage attached, the deviation-rule can have no application, for the application of the deviation rule presupposes, that initial permission was given which resulted in coverage.
The next problem presented is since-the accident occurred while Mr. Giblin was using the car for his personal gratification- and the coverage did not attach for garage or personal use at delivery, did Mr. Mon-taldo give Giblin actual or implied permission to use the car personally in the intervening time between delivery and the accident? This is a question of fact and we believe the record discloses no such permission was granted.
The record conclusively discloses that actual permission for personal use of the automobile was not given to Mr. Giblin by Mr. Montaldo. Mr. Giblin throughout his testimony states that he had custody of the automobile only for repairs and in order to correct the “hum” in the motor it was necessary to road test it. The positive testimony of Mr. Montaldo clearly establishes that he did not in any manner give authority to Mr. Giblin to use the automobile for his personal use.
The next contention of plaintiff and Travelers Indemnity Company is that Mr. Montaldo impliedly gave permission to Mr. *349 Giblin to use the automobile personally. The facts that they contend give rise to implied consent are the prior relationship of Mr. Giblin and Mr. Montaldo relative to the use of the automobile; and the use of the automobile the night of the accident by Mr. Giblin with the knowledge of Mr. Montaldo. The testimony in regard to the prior relationship of Mr. Giblin and Mr. Montaldo relative to the use of the car is in conflict. Mr. Giblin states that he had driven the car some fifteen or twenty times before. Montaldo states that only in one instance had Mr. Giblin used the car alone and that was on a weekend trip to the country which they took together in the automobile. We feel that Mr. Giblin may have driven the car quite often when he and Mr. Montaldo were together, but the evidence does not establish that Mr. Gib-lin had free use of the car or that Montaldo would give him even occasional use of the car for his personal purposes. In short, there was no history of prior access of Mr. Giblin to the automobile or relationship with Mr. Montaldo which would give rise to a blanket permission of Mr. Giblin to use the automobile.
The night of the accident Mr. Montaldo was with Mr. Giblin and his wife while they were using the car for a period of several hours. The plaintiff contends that since Mr. Montaldo did not voice objection to the use of the vehicle by Mr. and Mrs. Giblin, but acquiesced by going to dine with them and allowing Mr. Giblin to take him home in the automobile this conduct gave Mr. Giblin implied permission to use the automobile. This presentation of the facts, however, ignores that Mr. Giblin told Mr. Montaldo at Brunigs, after the political rally, when Mr. Montaldo'saw he had the automobile, that he was using it in order to find the “hum” in the motor. For this reason we do not believe Mr. Montaldo acquiesced in the personal use of the car by Mr. Giblin or impliedly gave him permission to use it for any other purpose than road testing.
We are aware that implied permission of the owner is not to be construed in a restrictive sense but broadly, and depends on all the facts and circumstances surrounding the use of the automobile. In this case however, under the facts, we cannot possibly construe consent on the part of Mr. Montaldo for any other purpose than the’ use of the automobile for road testing.
Thus the -policy of Employers covering the Montaldo Insurance Agency, In'c., automobile did not provide coverage at the time of the accident, for coverage did not attach on the initial delivery of the automobile to Giblin’s Auto Service, Inc., due to the repair shop exclusion; and permission to use the automobile personally was never given to Mr. Giblin. Therefore, the judgment of the trial court- insofar as it dismisses the claims of the two plaintiffs, Mrs. McConnell and Mr. Clayton against Employers Insurance Company must be affirmed.
LIABILITY OF TRAVELERS FOR THE PROPERTY DAMAGE TO THE AUTOMOBILE TO WHICH EMPLOYERS IS SUBROGATED
The automobile involved herein was left by Montaldo Insurance Agency, Inc., with Giblin’s Auto Service, Inc., for the purpose of making certain repairs. Giblin’s Auto Service, Inc., thereby became a compensated depositary. See Lumbermens Mutual Casualty Company v. Wallace, 138 So.2d 247 (La.App.1962). The relationship between Giblin’s Auto Service, Inc., and Montaldo Insurance Agency, Inc., then is quite different from the relationship between Mrs. McConnell, Mr. Clayton and Giblin’s Auto Service, Inc., and its insurer. In short, if there would be any liability between Giblin’s Auto Service, Inc., and the personal injury claimants it would be ex delicto; however, the relationship and liability between Giblin’s Auto Service, Inc., and Montaldo Insurance Agency is ex *350 contractu. Therefore, the duty ex con-tractu owed to Montaldo Insurance Agency, Inc., is quite different from the duty owed to the personal injury claimants, ex delicto, and liability will be imposed accordingly.
The duty owed by a depositary is to return the object deposited in the same condition that it was received. LSA-C.C. art. 2945. This duty is well stated in Standard Motor Car Co. v. State Farm Mut. A. Ins. Co., 97 So.2d 435 (La.App.1957):
“ * * * We are reminded that the garageman, as depositary or bailee, is under a duty to return the car deposited with him in the same condition as received, and that — as between him and his customer, the depositor — injury to the car during the garageman’s custody establishes a prima facie case in favor of the customer against the garageman. Hazel v. Williams, La.App. 2. Cir., 80 So.2d 133; Articles 1908, 2937, 2938, 2944, 2945, LSA-Civil Code. * * * ”
Since a depositary must return the article in the same condition as it was when delivered, this duty would not be affected if damage was inflicted by an employee who was out of the course and scope of his employment as long as the depositary’ has control of the automobile. Herein Giblin’s Auto Service, Inc., did have control of the automobile and damage was done to it. It is immaterial that the employee who was the cause of the damage was not in the course and scope of his employment at the time of the accident.
The doctrine has no application or bearing on a bailor-bailee situation.
The next question is whether Travelers is bound for this damage under its policy. The pertinent provision follows:
"COVERAGE D — PROPERTY OF OTHERS IN CHARGE OF NAMED INSURED. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property of others of a kind customarily left in charge of garages, including the loss of use thereof, caused by accidental collision or upset of such property while in charge of the named insured in connection with his automobile sales agency, repair shop, service station, storage garage or public parking place operations.”
It is clear that the above provision covers the exact type of claim that is involved herein. Travelers in its brief go as far as to admit liability, in effect, for this claim by stating: “Giblin’s Auto Service, Inc., as the bailee for the 1960 Thunderbird owned by Montaldo Insurance Agency would be liable for any property damage caused to the vehicle while it was in the possession of Giblin’s Auto Service, Inc. A bailor owes the duty to return the object in substantially the same condition as when received * * *. A deviation from the scope and course of employment would not affect the legal liability of a bailor * * We must state that we agree with counsel for Travelers. Giblin’s Auto Service, Inc., breached its duty of care as a compensated depositary, or bailee, and Travelers is responsible for the damage done to the automobile by Giblin’s Auto Service, Inc., through the negligence and malfeasance of its employee, Thomas Giblin. The judgment of the trial court in favor of Employers as subrogee of Montaldo Insurance Agency, Inc., against Travelers must be affirmed.
Therefore, for the reasons set forth herein:
The judgment of the District Court in favor of plaintiff, Mrs. Miriam Primo, wife of Archie McConnell, in cause No. 57-910, and against the defendant Travelers Indemnity Company is reversed and set aside and plaintiff’s suit is dismissed; and the judgment rendered in favor of the de *351 fendant, Employers Casualty Company against Mrs. Miriam Primo McConnell is affirmed. All costs to be borne by plaintiff.
It is further decreed that the judgment rendered by the District Court in favor of plaintiff James H. Clayton and against Travelers Indemnity Company, in cause No. 63-250, is reversed and set aside and plaintiff’s suit is dismissed; and the judgment rendered in favor of the defendant Employers Casualty Company and against said plaintiff James H. Clayton is affirmed. All costs to he borne by plaintiff.
It is further decreed that the judgment rendered in favor of Employers Casualty Company of Dallas and against Travelers Indemnity Company in cause No. 58-374, for the sum of $1,359.93, together with legal interest from date of judicial demand until paid is affirmed. All costs to he borne by defendant.
Affirmed in part; reversed in part; and rendered.