SAVOY, Judge.
This automobile accident tort action is presently before us for the second time, we having originally heard the case on appeal from a judgment of the trial court granting defendant’s motion for summary judgment. We overruled the motion for summary judgment and remanded the case for trial on the merits.
The facts leading up to and prior to the accident are very important in determining the question presented on this appeal, i.e., whether plaintiff was in the course of his employment at the time of the accident. If Manuel was in the course of his employment, the judgment appealed from must be affirmed because of a particular exclusion of the automobile liability insurance policy issued by defendant and which was in effect at the time of the accident providing as follows:
“The insurance with respect to any person or organization other than the named insured does not apply:
* * * * * *
“(c) To any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of an automobile in the business of such employer.”
On August 29, 1962, William O. Johnson, employed by Abdalla’s Furniture Stores as secretary-treasurer of various corporations and as an assistant general manager of the furniture operations, drove from one of the two Opelousas stores to Lafayette to supervise the operations of the two Lafayette stores. The trip to Lafayette was made by Johnson in a station-wagon belonging to Abdalla’s, but used almost exclusively by Johnson, and which was insured by defendant. On the same day, plaintiff and a co-employee, J. A. Allen, were sent by Mr. Abdalla from one of the Opelousas stores to one of the Lafayette stores that was having a large sale *153 and needed assistance in locating the various departments and displays. Mr. Abdal-la assigned a company stationwagon to plaintiff for the trip.
During the course of the day Mr. Louis M. Wilson, a sales representative with RCA invited Johnson to meet him for a drink after work at the Holiday Lounge on the Abbeville Highway. Sometime during the afternoon Wilson also invited plaintiff and Allen to join him for a drink at the Holiday Lounge, after work. Around 6:00 P.M. Allen and plaintiff drove to the lounge to meet Wilson, and after having a beer or two,. Allen indicated he had to hurry and return to Opelousas. At about the same time that Allen indicated he had to leave, Johnson appeared at the lounge. It was decided that Allen would take the company stationwagon in which he and plaintiff had driven over, and plaintiff would catch a ride to Opelousas with either Wilson or Johnson.
After the men finished their second beers, plaintiff and Johnson entered Johnson’s company stationwagon to go back to Opelousas where Johnson was to meet Mr. Abdalla for the discussion of business. After a short distance driving in the inclement weather, the vehicle failed to negotiate a right turn, went across the highway and hit an embankment with resulting injuries to both men. Johnson stated he was unfamiliar with the road, had been talking prior to the accident, and did not see the curve because it was not marked and visibility was poor.
A trial on the merits resulted in a verdict of $10,282.63 in favor of plaintiff and against Johnson, of which amount $1,282.-63 was for special damages. Plaintiff’s claims against Liberty were denied. Judgment was further rendered in favor of Liberty and against plaintiff and Johnson for workmen’s compensation benefits paid to plaintiff in the form of medical payments. From the judgment plaintiff has appealed devolutively, contending that the trial court erred in holding that plaintiff was in the course of his employment, thus denying plaintiff’s claim against Liberty.
In urging reversal of the trial court’s holding, plaintiff relies upon the following cases: Wills v. Correge, 148 So.2d 822 (La.App. 4 Cir.1963); Jagneaux v. Marquette Casualty Company, 135 So.2d 794 (La.App. 3 Cir.1961); Ruth v. Royal Indemnity Company, 83 So.2d 520 (La.App. 2 Cir.1955); and Sweet v. Trahan, 159 So.2d 782 (La.App. 3 Cir.1964). His argument is basically that he had not agreed to meet with Johnson at the lounge, had relinquished the transportation furnished to him by his employer, had been offered a ride to Opelousas by Wilson, had no other duties to perform for his employer, and considered himself off work.
On the other hand, defendant cites numerous cases in which similar policy exclusions were present, and in which the courts held that where co-employees were injured during the course and scope of their employment by a co-employee’s negligence, no recovery would be had as the exclusive remedy would be under workmen’s compensation. With these cases we have no quarrel, but defendant is in effect begging the question as plaintiff readily agrees and is basing the whole thrust of his appeal on the fact that plaintiff was not injured in the course of his employment.
In Wills v. Correge, supra, defendant was employed by Columbia Paper Company, Inc. as a salesman and was driving his personally owned vehicle returning home from a day’s work when he struck plaintiff’s child. The court, in holding the defendant was not in the course and scope of his employment, said:
“The general rule is that an employee, in going to and from his place of employment, is not considered as acting within the scope of his employment to such an extent as to render his employer liable to third persons for the employee’s negligent acts. * * * This is true even when the vehicle used for transportation by the employee is owned and furnished by the employer except where *154 there is some distinguishing and additional fact which causes such travel to benefit or serve the employer or his business. * * (Citations omitted.)
The court further stated:
“While Article 2320 makes employers liable, under the doctrine of respondeat superior, for the damage occasioned by the fault of their employees ‘in the exercise of the function in which they are employed’, that phrase is a codal expression of the usual ‘in the course and scope of employment’, and it is well settled that the very liberal construction given to the latter phrase in various workmen’s compensation cases is not followed in tort cases for personal injuries and damages where the courts have adopted a strict interpretation and construction. * * (Citations omitted.)
In Jagneaux v. Marquette Casualty Company, supra, although we were confronted with a case involving workmen’s compensation, we stated a principle which becomes useful in analyzing a tort case to determine whether ah injury occurred in the course of employment. We stated:
“The doctrine of re-entry or temporary deviation is accepted by this and other courts of this State to mean, in a matter such as this, that where the employee who was driving the vehicle provided by the employer for the transportation of himself and other employees, departs from his employment and undertakes a mission of his own, such employee re-enters his employment and the scope thereof after he has completed his private mission and has begun to return to his next duty, or, after such completion, has begun to return the vehicle to the place where it belongs. * * (Citations omitted.)
In Ruth v. Royal Indemnity Company, 83 So.2d 520 (La.App. 2 Cir.1955), the court stated:
“One of the elements in connection with deviation is found in the intention of the employee or, as it has been expressed, ‘the mental purpose of the employee’. * * (Citations omitted.)
Finally, in the case of Harris v. Hymel Store Company, 200 So.2d 84 (La.App. 1 Cir.1967), the court also emphasized the different construction given to “course and scope of employment” as depending upon whether a tort action was involved or a workmen’s compensation action, saying that the strict interpretation should be used when considering a tort claim.
We feel that the overall facts and the strict interpretation that is to be applied in tort cases leads to the inescapable conclusion that plaintiff was not in the course of his employment when he was injured. He had completed his day’s work, relinquished control over his company automobile, and had begun to relax over several beers not apparently worrying about when or with whom he would make the return trip to Opelousas where he lived.
Thus concluding that plaintiff was injured outside the course of his employment, we must next determine whether the driver of the vehicle was negligent, and if so, whether plaintiff was guilty of any contributory negligence.
Johnson stated in his testimony that the accident occurred at dusk on an unmarked curve, and that he did not see the road turn because he was talking and because there were no markings indicating the curve was there. The trial judge held, and we think correctly so, that Johnson was guilty of negligence. He also apparently held that plaintiff was not guilty of any contributory negligence, and we are also in accord with this finding as there is nothing in the record whatsoever to indicate that plaintiff was guilty of contributory negligence as he had ridden with Johnson in the past and gave a warning of the presence of the curve upon first noticing it.
*155 The last issue raised on this appeal by virtue of our prior findings herein deals with the quantum awarded plaintiff, as he contends it should be revised upward.
Plaintiff sustained fairly severe injuries resulting in his hospitalization for approximately one week and his confinement at his home for some four weeks. The record reveals that he suffered the following injuries: fracture of his nasal bones, fracture of the nasal septum, a linear laceration of his forehead and other lesser lacerations of his face, a fracture of the maxilla, acute serious otitis of the left ear, fractures of four ribs, possible fracture of the lower one-third of the sacrum, a fractured left toe and calvarium, and severance of a facial nerve resulting in a slight facial weakness and a partial paralysis of the left upper lip.
In view of the medical reports found in the record indicating that as of February 22, 1963, the only residual he had left was some pain on sitting down, a stiffness of the left great toe, and a slight facial weakness of the facial nerve on the left which is resolving; that as of November 23, 1962, his ear trouble and nose had healed well; and, that as of April 4, 1963, the partial paralysis of the lip would be self limiting, and that plaintiff would regain movement of the upper left lip, and the fact that plaintiff was compensated fully while he was recovering from his injuries, we cannot say that the trial judge abused the discretion granted him in determining the award.
For the foregoing reasons the judgment appealed from is reversed in part, and judgment is entered against William O. Johnson and Liberty Mutual Insurance Company, in solido, in the amount of $10,282.63, with interest at the legal rate from August 15, 1963, until paid, less a credit to Liberty Mutual Insurance Company in the sum of $1,220.63 for medical expenses incurred by it. Costs of this appeal to be paid by defendant, Liberty Mutual Insurance Company.
Reversed in part and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.
SAVOY, J., is of the opinion a rehearing should be granted.