180 So.2d 406

Mrs. Miriam Primo McCONNELL

v.

TRAVELERS INDEMNITY COMPANY and
the Employers Casualty Com-
pany of Dallas.

James CLAYTON

v.

The TRAVELERS INDEMNITY COMPANY
and the Employers Casualty Com-
pany of Dallas.

No. 47716.

Nov. 8, 1965.

Rehearing Denied Dec. 13, 1965.

Joseph J. Laura, Jr., New Orleans, for applicant.

Dufour, Levy, Marx & Lucas, Leonard B. Levy, Michael Osborne, New Orleans, for defendant-respondent.

SANDERS, Justice.

In these consolidated cases, the plaintiffs sought damages for personal injuries received in an automobile accident on June 16, 1960, while they were occupants of a Thunderbird automobile owned by Mont-

aldo Insurance Agency, Inc. and operated by Thomas Giblin. Made defendants were Travelers Indemnity Company, garage liability insurer of Giblin's Auto Service, Inc., and The Employers Casualty Company of Dallas, public liability insurer of Montaldo Insurance Agency, Inc.

The district court rendered judgment in favor of plaintiffs, Mrs. Miriam Primo McConnell for $1500.00 and James Clayton for $749.00, against Travelers, the garage liability insurer. It rejected their demands against Employers.

Plaintiffs and Travelers Indemnity Company appealed. The Court of Appeal reversed plaintiffs' judgment against Travelers but otherwise affirmed the district court judgment. 172 So.2d 341.

We granted certiorari to review the Court of Appeal's judgment only as to plaintiffs' demands against Employers. 247 La. 726, 174 So.2d 134.

That the automobile accident in which the plaintiffs were injured occurred as a result of the negligence of the driver, Thomas Giblin, is strongly supported by the evidence. While driving at an excessive speed, he lost control of the vehicle, and it struck the side of a traffic circle.

The decisive question is whether the public liability insurance policy issued to Montaldo Insurance Agency, Inc. by Employers Casualty Company covered the driver, Thomas Giblin.

The omnibus clause of the policy provides:

"III Definition of insured.

"(a) with respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'Insured' includes the Named Insured and, if the Named Insured is an individual, his spouse if a resident of the same household, and ·also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or such spouse or with the permission of either. The insurance with respect to any person or organization other that the Named Insured or such spouse does not apply:

"(1) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, *with respect to any accident arising out of the operation thereof,* but this provision does not apply to a resident of the same household as the Named Insured, to a partnership in which such resident or the Named Insured is a partner, or to any partner, agent or employee of such resident or partnership." (Italics ours)

▬▬▬▬

The pertinent facts are these: The Montaldo Insurance Agency, Inc. owned a Thunderbird automobile listed in the above policy. On the morning of June 15, 1960, Joseph Montaldo, president of the agency, delivered the automobile to Giblin, who operated Giblin's Auto Service, to find and repair a "hum" in the motor. Giblin had no opportunity to repair the car during the day. At the end of the day, Giblin drove the car to his home, road testing it during the drive.

Giblin and his wife attended a political rally that night. Since the Thunderbird was parked behind his own car in his driveway, Giblin drove it, testifying later he believed Montaldo would have had no objection.

The Giblins met Montaldo and his companion at the political rally, where they spent several hours together. Afterwards, the two couples went in the Thunderbird, with Giblin at the wheel, to a local restaurant for a late dinner, at approximately 11:00 p. m. When they had finished eating, Giblin drove Montaldo to his residence, arriving at about 12:30 a. m. After that, Giblin drove to his home, where he and his wife had coffee. Then, alone, he drove the Thunderbird to the Fair Vue Lounge where he had some drinks. The automobile accident occurred after he had left the lounge with the plaintiffs as his guest passengers.

The evidence discloses Giblin was a friend of Montaldo and had visited in the Montaldo summer home "quite often." Giblin had driven automobiles for Montaldo on other occasions.

Employers Casualty Company contends its insurance policy affords no coverage for two reasons:

(1) The omnibus clause bars coverage while the automobile is being used by a repairman.

(2) That at the time of the accident Giblin was not operating the automobile with the named insured's permission so as to come within the omnibus clause of the policy.

■ The first contention may be easily rejected. The repair shop exclusion requires that the accident arise out of the operation of the shop. The Court of Appeal correctly found that Giblin was not driving the automobile in the operation of the repair shop at the time of the accident. He was neither road testing it nor operating it in the scope of the repair shop employment. Rather, he was using it for a strictly personal mission during his off-duty hours. Hence, the repair shop exclusion is inapplicable. See Nyman v. Monteleone-Iberville Garage, 211 La. 375, 30 So.2d 123 (1947) and 7 Am.Jur.2d, Automobile Insurance, § 125 pp. 444–445.

More difficult is the second question, whether Giblin was driving the automobile with the permission of Montaldo, agency president, so as to make Giblin an omnibus insured.

Employers contends Montaldo granted Giblin permission to operate the automobile for the sole purpose of locating the motor noise, and never authorized Giblin to use it on a personal mission.

Plaintiffs contend the named insured's initial permission to drive the automobile is sufficient for omnibus coverage, and Giblin had express or implied permission to personally use the vehicle on the night the accident occurred.

The Court of Appeal found implied permission solely to road test the automobile and denied coverage. We do not agree with this holding.

■■ Pertinent here is the well-established rule that initial permission from the named insured to use an automobile is sufficient to make the driver an insured under the omnibus clause. It is unnecessary to determine whether the driver was proceeding within the limits of the permission at the time of the accident. A deviation from the initially permitted use-purpose is immaterial. Parks v. Hall, 189 La. 849, 181 So. 191 (1938); Waits v. Indemnity Insurance Co. of North America, 215 La. 349, 40 So.2d 746 (1949); Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744 (1950); Gonzales v. Beaumont Cement Sales Co., La.App., 125 So.2d 785 (1961);

Miller, The Omnibus Clause, 15 Tulane Law Review 422, 425.

██ Such initial permission may be either express, or implied from the circumstances. See Dominguez v. American Casualty Co., supra; Talbot v. Allstate Insurance Company, La.App., 76 So.2d 76 (1954); Hurdle v. State Farm Mutual Insurance Company, La.App., 135 So.2d 63 (1961); Sockrider, "Omnibus Clause"—Problems in Louisiana Jurisprudence, 22 Louisiana Law Review 626, 630; and 7 Am.Jur.2d, Automobile Insurance, § 113, pp. 425–427.

The Court of Appeal cited the above rule but declined to apply it because the initially permitted use-purpose, road testing, fell within the repair shop exclusion from omnibus coverage. This theory, as we view it, changes the rule from *initial permission* to *initial coverage*. Since the theory diverges from our initial permission doctrine, uniformly applied since 1938, we must reject it.

In the present case, the parties agree that Giblin had permission to use the automobile to locate the motor noise. Thus, under the well-established jurisprudence, the deviation from that purpose will not defeat coverage. This is especially true under the circumstances shown here. On the night of the accident, Giblin used the automobile for what must be considered a social purpose. Although Montaldo was aware of this use, he did not object and allowed Giblin to retain possession.

██ We conclude Giblin had the necessary permission to qualify him as an insured under the omnibus clause of the public liability insurance policy. Hence, plaintiffs are entitled to recover under the policy.

Since the Court of Appeal has not passed upon damages, this Court remands the case to that court for such determination. Felt v. Price, 240 La. 966, 126 So.2d 330 (1961) and the cases therein cited.

For the reasons assigned, the judgment of the Court of Appeal is reversed, and judgment is rendered in favor of the plaintiffs and against the defendant, The Employers Casualty Company of Dallas, in such sums as may hereafter be fixed. The case is remanded to the Court of Appeal, Fourth Circuit, for the fixing of damages according to law. All costs of court relating to plaintiffs' demands are to be paid by the defendant.

HAMITER, J., concurs in the decree.

HAMLIN, J., dissents, being of the view that the opinion and decree of the Court of Appeal are correct.

On Rehearing

PER CURIAM.

In an application for a rehearing counsel for Employers, the public liability in-

surer of Montaldo Insurance Agency, Inc., are complaining that we erred in holding that the doctrine of Parks v. Hall, 189 La. 849, 181 So. 191 (1938) is applicable to this case for the reason that there was no initial permission given to and no coverage of Giblin, as an omnibus insured, in view of the fact that the automobile was placed in his possession solely as an automobile repair man.

■ Conceding, for purposes of discussion, that counsel are correct with respect to the initial deposit of the car with Giblin for repair work and that he was not covered as an omnibus insured at that time, the result reached by us is nonetheless proper in view of the particular facts and circumstances of the case which are detailed in our original opinion. There, it is shown that Giblin and his wife attended a political meeting in the insured car where they met Montaldo, President of the insured agency, and his date. Afterwards, Montaldo and Giblin engaged in a joint pleasure pursuit, the two couples, with Giblin driving the Thunderbird, going to a local restaurant for a late dinner at approximately 11:00 p. m. This, together with other facts set forth in our original opinion, plainly evidences at least implied permission by Montaldo to Giblin to use the car for purposes other than to locate the cause of the "hum" in the motor. Hence, the later use of the car by Giblin for his own personal pleasure was covered under this initial permission as an omnibus insured and it is immaterial, under Parks v. Hall and the other cases cited in our original opinion, that he deviated albeit we entertain doubt under the believable facts that Montaldo placed any restriction on Giblin's personal use of the agency's automobile.

The application for a rehearing is denied.

HAMLIN, J., dissents, adhering to the views previously expressed.

HAMITER, J., concurs in the result.