225 So.2d 648 (1969)
Mrs. John A. FONTENOT, Individually, etc., Plaintiff-Appellant,
v.
AETNA INSURANCE COMPANY et al., Defendants-Appellees.
No. 2794.
Court of Appeal of Louisiana, Third Circuit.
August 7, 1969.
Rehearing Denied August 26, 1969.
*649 Scofield, Cox & Bergstedt, by James J. Cox, Lake Charles, and Raleigh, Newman, Lake Charles, for plaintiff-appellant.
Hall, Raggio, Farrar & Barnett, by Thomas L. Raggio, Lake Charles, for defendant-appellee, Aetna.
Plauche & Plauche, by Reid K. Hebert, Lake Charles, for defendant-appellee Continental Ins.
Camp, Carmouche, Palmer, Carwile & Barsh, by Harry Barsh, Lake Charles, for defendant-appellee.
Before TATE, FRUGE, and CULPEPPER, Judges.
TATE, Judge.
The plaintiff appeals from summary judgments upholding policy defenses and dismissing certain insurers from this tort suit. The principal issue is whether the driver of the accident-automobile was operating with the express or implied consent of the named insured; or, rather, whether there is a genuine issue as to this material fact, so as to entitle or not the insurers to summary judgment. LSA-C.C.P. Art. 966.
By the principal demand, the widow and children of the decedent killed in an accident seek damages for his wrongful death. They sue the driver LeDoux and the alleged insurers of the Plymouth sedan involved in the accident.
The Plymouth was not owned by LeDoux but had been borrowed by him from the lot of his employer, a garage establishment. The vehicle had been sent there for servicing by its owner, an automobile sales agency.
Contending that LeDoux's operation of the automobile was with the implied consent of the named insured, the sales agency as named insured, the plaintiff widow joins as defendant this named insured's general liability insurer (Aetna) and its excess insurer (Continental). The essential defense of these insurers is that the named insurer had not given permission to either LeDoux or his employer to use the vehicle for social purposes, such as those involved at the time of the accident.
Facts.
Construing the affidavits and depositions least favorably to the mover for summary judgment, as required, the following facts are shown:
The Plymouth was owned by Cagle Chevrolet, Inc. ("Cagle"), the named insured of the Aetna and Continental policies. The vehicle had been sent to the Broad Street Shell Station ("Broad Street") for servicing. By a continuing arrangement between Cagle and Broad Street, all of Cagle's used cars were sent regularly to Broad Street for cleanup and other servicing to prepare them for resale, usually from two to five vehicles a day.
LeDoux was an employee of Broad Street. At the close of his work on Saturday, August 12, 1967, he took the Plymouth for personal use over the weekend. He did so with the knowledge and consent of Kleckley, Broad Street's manager and co-owner.
This automobile was involved in the fatal accident several hours later, in the course of LeDoux's use of it for social purposes. The plaintiff's decedent was a passenger in the car when it overturned.
*650 LeDoux's deposition shows that he believed he was authorized in his use of this automobile, because on previous occasions Broad Street's employees had done so. As Kleckley testified, the free use of the Cagle automobiles was "just a practice that everybody did". Tr. 73. LeDoux also filed an affidavit stating that he was driving the Plymouth with the permission of Cagle, its agents or assigns.
LeDoux's principal work was steam cleaning and waxing used cars for Cagle. He himself picked them up from Cagle for Broad Street, or else they were sent by Cagle over to the garage.
LeDoux worked closely with Lavelle Jones, Cagle's used car manager. For two months prior to the accident, LeDoux had had the personal use of a Buick owned by Cagle, which he contemplated buying. A day or so before the accident, Jones told LeDoux not to use the Buick any more, since he was not going to buy it. (But LeDoux still had the Buick at home at the time of the accident, although it was disabled.) However, LeDoux testified, he had been informed by Jones that as long as Cagle had cars at the service station, he did not have to walk. Tr. 158. LeDoux also had in the past used for personal purposes, overnight or on errands, Cagle cars sent to Broad Street, with the consent of Kleckley. Tr. 119, 121-23.
While Jones, Cagle's manager denied he had authority to lend Cagle cars, he admitted that he had done so on occasions in the past. Tr. 196-98, 207, 211. He did not deny that other employees of Cagle had also on occasion lent Cagle cars. Tr. 198. His testimony indicates, further, that he could lend cars for the personal use of others if in his best judgment it was for Cagle's benefit. Tr. 212.
Although Jones equivocated on the issue, he also admitted that he was reasonably sure that one or more of the Broad Street employees had used the Cagle cars for personal purposes, including indicated weekend use. Tr. 181, 191, 196, 215. He also stated he had never instructed the Broad Street employees not to use Cagle cars for personal purposes while entrusted to them. Tr. 198, 213-14.
Affidavits were filed by Cagle's president (Cagle) and its manager (Daigle) to the effect that only they had permission to lend Cagle cars to anyone to keep overnight. They denied that they had given permission to LeDoux or to Kleckley to use the Plymouth for personal purposes.
Legal principles relating to "omnibus" permission.
With regard to Aetna and Continental, the principal issue is whether LeDoux was driving Cagle's automobile with the express or implied permission of Cagle. Further, since Kleckley-Broad Street (LeDoux's employer) did have permission from Cagle to use the automobile, a substantial additional issue is whether the initial permission to Kleckley-Broad Street included within its scope the authority for Kleckley-Broad Street to permit the personal use of this vehicle by Broad Street employees.
The following principles apply to resolution of these issues:
First, "* * * initial permission from the named insured to use an automobile is sufficient to make the driver an insured under the omnibus clause. It is unnecessary to determine whether the driver was proceeding within the limits of the permission at the time of the accident. A deviation from the initially permitted use-purpose is immaterial. * * * Such initial permission may be either express, or implied from the circumstances. * * *" McConnell v. Travelers Indemnity Co., 248 La. 509, 180 So.2d 406, 409, and authorities cited therein.
Second, "* * * only the named insured may constitute one a permittee and thus afford him coverage; if an original borrower turns over the possession of the vehicle to a second permittee, this second *651 permittee is not considered as using the car with the permission of the named insured, unless, either expressly or by implication, the initial permission included the named insured's consent for the first permittee to allow third persons to use the insured vehicle." Peterson v. Armstrong, La.App.3rd Cir., 176 So.2d 453, 455, and authorities cited therein. (Italics ours.)
Thus, a formal policy denying the initial permittee authority to lend the car to a second permittee may be belied by actual practice indicating implied consent. Peterson v. Armstrong, cited above. As we stated in Coco v. State Farm Mutual Automobile Ins. Co., La.App.3rd Cir., 136 So.2d 288, 295: "We can readily conceive of circumstances where the permission of the named insured for a second permittee to use the automobile may be implied, even though the named insured has specifically prohibited the initial permittee from letting someone else drive. Such permission may be implied, for instance, if the named insured has knowledge of the fact that the original permittee has permitted others to use the automobile in spite of that prohibition, and after acquiring that knowledge he makes no protest and takes no action to prevent him from continuing to do so. * * *"
Legal principles relating to summary judgments.
Summary judgments may be granted when the pleadings, depositions, interrogatories, admissions, and affidavits show there is no genuine issue as to material facts. LSA-C.C.P. Art. 966. However, the summary judgment remedy is not a substitute for a trial where there is a genuine issue of material fact which must be resolved.
In passing upon a motion for summary judgment, the function of the court is not to determine the merits of the issues raised, but rather only to determine whether or not there is a genuine issue of material fact. To obtain a summary judgment it is not sufficient to prove that it is unlikely that the plaintiff may recover, nor that the showing then made preponderantly indicates there is no liability. The burden of showing that there is not a material factual issue is upon the mover for summary judgment. All doubts are to be resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts. See: Kay v. Carter et al., 243 La. 1095, 150 So.2d 27; Roy & Roy v. Riddle, La.App.3rd Cir., 187 So.2d 492; Green v. Southern Bell Tel. & Tel. Co., La.App.3rd Cir., 204 So.2d 648.
We have further noted that the summary judgment device is often not appropriate when based only upon a defendant's uncontradicted affidavits and admissions to negate subjective facts material to the fact case, such as motive, intent, malice, good faith, or knowledge, Roy & Roy v. Riddle, La.App.3rd Cir., 187 So.2d 492. In such instances, as we noted at 187 So.2d 495: "To permit a defendant by ex parte affidavit to avoid a trial on the merits would thus permit him to `"withdraw these witnesses from cross-examination, the best method yet devised for testing trustworthiness of testimony"', Subin [Subin v. Goldsmith, 2 Cir., 224 F.2d 753.] cited above at 224 F.2d 758, as well as to withdraw their testimony from effective demeanor-evaluation by the trier of fact which, in the light of all the circumstances, may determine that the witness's words which negate, are nevertheless untrue in the light of all circumstances."
Conclusion as to summary judgment on permission question.
In its painstaking and conscientious analysis of the showing made by the depositions and affidavits, our trial brother concluded that LeDoux did not have permission from Cagle to use the vehicle, neither expressly from Jones, nor by implied consent, either of Jones or of Cagle, to permit Broad Street employees to use the vehicle.
*652 In so holding, the trial court in part relied upon affidavits of Cagle's officers and the testimony of its used car manager that no one but two of Cagle's officers had authority to lend Cagle vehicles to others for personal use. Acceptance of this as uncontroverted, of course, might well lead to the trial court's conclusion that therefore the consent of the named insured, Cagle, to the use of the automobile could not be given by any permission of Jones, Cagle's used car manager, nor of Kleckley-Broad Street.
However, as we have noted, the implied permission to use a vehicle, either directly by the named insured's employee (here, Jones), or else indirectly through the scope of the permission given the initial permittee (here, Kleckley-Broad Street), may arise from circumstances indicating unobjected-to use in the past, as well as from specific verbal authorization. Likewise, testimony as to a pro forma policy prohibiting use except with specific permission, may be negated by circumstances indicating that in fact broader use occurred to the knowledge of the named insurer and its officers and employees with ostensible authority to permit it.
Here, the evidence sufficiently indicates that there are genuine issues of fact as to whether the circumstances at a full trial on the merits might prove implied consent of Cagle as a matter of known common practice to the use for personal purposes by Broad Street employees of Cagle vehicles sent to Broad Street for servicing. Under the showing made, there are also genuine issues of fact relating to Jones' authority to lend Cagle vehicles to others and of Jones' actual or implied permission to LeDoux to use Cagle vehicles.
These issues of material fact are not dissipated by the acceptance as if uncontradicted of the affidavits of Cagle's officers, nor by accurate analysis of the depositions minimizing the showing made in support of the plaintiff's contentions. If there are indeed material factual issues, they cannot be resolved by the summary judgment procedure, no matter how preponderantly the evidence might seem to support the merit-position of the mover.
For these reasons, we conclude that our trial brother erred in sustaining the motions for summary judgment filed by Aetna and by Continental.
Allstate's motion for summary judgment.
Allstate Insurance Company was made defendant. It was sought to be held liable by reason of a garage insurance policy issued to Broad Street.
The trial court held that the negligent operation of the automobile driven by LeDoux, Broad Street's employee, was not covered by Broad Street's garage policy, which covered only vehicles maintained for garage purposes or principally used thereon. McConnell v. Travelers Indemnity Co., La.App. 4th Cir., 172 So.2d 341 (reversed as to another insurer on another issue, 248 La. 509, 180 So.2d 406).
The appellant no longer contends error in this ruling. We affirm the summary judgment dismissing Allstate.
Decree.
Accordingly, we affirm the summary judgment dismissing Allstate Insurance Company, but we reverse the summary judgments dismissing the Aetna Insurance Company and the Continental Casualty Company. The case is remanded for further proceedings consistent with the views expressed. The costs of this appeal are to be paid by Aetna and Continental; all other costs to await final disposition of these proceedings.
Affirmed in part; reversed in part.

On Application for Rehearing.
En Banc. Rehearing denied.