230 So.2d 253 (1969)
255 La. 251
AMERICAN HOME ASSURANCE COMPANY et al.
v.
M. J. CZARNIECKI, Individually and as Administrator of the Estate of his Unemancipated minor son, Charley A. Czarniecki, et al.
Nos. 49610, 49612, 49614.
Supreme Court of Louisiana.
December 15, 1969.
Rehearings Denied January 20, 1970.
*254 Robert E. Eatman, Shreveport, petitioners in No. 49,610 and respondents in No. 49,612.
Pike Hall, Jr., of Wilkinson, Woods, Carmody, Meadows & Hall, Shreveport, for defendant-appellant and third party plaintiff.
Richard Switzer, of Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for Aetna Ins. Co.
DeWitt T. Methvin, Jr., of Gist, Methvin & Trimble, Alexandria, for State Farm Mutual Ins. Co.
SUMMERS, Justice.
Tri-Wheel, Inc., d/b/a Econo-Car of Shreveport, is the owner of a 1966 Valiant Sedan, which was under lease to Edwin Guillory on April 22, 1966. On that date, while being driven by Mrs. Guillory, the Valiant was involved in a collision with a 1957 Chevrolet driven by Charley A. Czarniecki, the minor son of M. J. Czarniecki. Tri-Wheel, Inc., and its collision insurer, American Home Assurance Company, Inc., instituted this suit against M. J. Czarniecki, individually and as administrator of the estate of his unemancipated sixteen year old son, Charley A. Czarniecki, for damage to the automobile and for loss of its use, allegedly due to the negligent operation of the Chevrolet by Charley A. Czarniecki.
Czarniecki answered denying Charley's negligence and alleged the contributory negligence of Mrs. Guillory; he also filed a third party petition making State Farm Mutual Automobile Insurance Company, *255 the liability insurer of the Chevrolet, and Aetna Insurance Company, his own automobile liability insurer, third party defendants. In the third party petition he prayed for judgment in solido against State Farm and Aetna for the amount of any judgment rendered against him, together with attorneys fees because of their failure to defend him in this suit. Thereafter, in a supplemental petition, plaintiffs joined State Farm and Aetna as defendants.
In their answers State Farm alleged that their policy which was issued to Jesse G. Waters, the registered owner of the Chevrolet, did not cover Czarniecki or his son. Aetna alleged in their answers that the provisions of the policy issued by them to Czarniecki did not cover Czarniecki or his son under the facts of this case; and, furthermore, their policy was only excess over that of State Farm. The limits of the State Farm policy insuring the Valiant belonging to Tri-Wheel, Inc., Aetna alleged, was sufficient to satisfy all claims asserted as a result of the collision. Both insurers pleaded the contributory negligence of Mrs. Guillory, the driver of the Valiant.
A motion for summary judgment filed by State Farm, based primarily upon the failure of Czarniecki to allege that Charley was driving the Chevrolet with the permission of the owner, was denied, and the case was tried on the merits. The District Court gave judgment for plaintiffs against Czarniecki, Charley and State Farm, in solido. Judgment was also rendered in favor of Czarniecki and against State Farm for attorneys fees. All claims against Aetna were rejected. On appeal to the Second Circuit, except for reducing the award of attorneys fees, the judgment of the District Court was affirmed. 216 So.2d 115.
State Farm, American Home and Czarniecki acting individually and for the minor, applied for certiorari and we granted writs to review the judgment of the Court of Appeal. 253 La. 307, 217 So.2d 408.
The Chevrolet automobile in question was registered in the name of Jesse G. Waters, the stepfather of seventeen year old Randy Carroll. Randy, however, had purchased the automobile with his own funds. And all the expense of operating and maintaining the automobile was borne by Randy with money which he earned. He had free use of the automobile and used it regularly to go to work and to school. When the automobile needed repairs, Randy and his friend Hans Gerteis used the latter's father's auto repair shop where they made the repairs together on Saturdays when the shop was not busy.
Hans and Charley Czarniecki, who were friends and schoolmates at Jesuit High, planned to double date and to attend the auto races at the Fairgrounds in Shreveport on the evening of April 22, 1966. Shortly before the appointed time, Hans' automobile was found to be out of order. So Hans went to Griff's Burger Bar where Randy worked and asked him if he could borrow the Chevrolet. He told Randy he wanted the car to take his mother shopping and to go to the auto races at the Fairgrounds on a double date, not mentioning who would go with him. Randy loaned him the car for this purpose with the understanding that he would return the car before twelve o'clock that night because Randy got off work at one.
In keeping with this plan, Hans took his mother shopping, returned home, changed clothes, picked up Charley and their dates and proceeded to the race track. Upon arrival they learned that the events were cancelled on account of rain. Friends they met there from Byrd High invited them to a party in the Western Hills neighborhood several miles away. They went along and joined the party there. While at the party Charley told Hans his date had to go home early. And, since Hans' date could stay longer, Hans loaned the Chevrolet to Charley to take his date home. After this was done, Charley was to rejoin Hans.
It had been raining that night and the streets were wet. On his return trip to the party in Western Hills, Charley approached *256 the intersection of Jewella Road traveling West on Greenwood Road. As he approached the intersection the traffic signal light controlling traffic on Greenwood Road changed to red, and Charley applied his brakes. But due to the fact that he was traveling forty miles per hour and the street surface was wet, his automobile slid into the intersection and collided with the Valiant being driven by Mrs. Guillory.
Just prior to the collision, Mrs. Guillory was proceeding along Jewella Road in a northerly direction. She stopped at the intersection of Jewella and Greenwood Roads on a red light. When the light changed to green she proceeded into the intersection, and when she had traversed the midpoint she was struck by the Chevrolet being driven by Charley.
Although the record indicates that Mrs. Guillory did not observe the approaching Chevrolet because her attention was focused upon the street ahead, her failure to do so was not negligence or a proximate cause of the collision.
[T]he rule is established in this State that a motorist traveling on a favored street, and, a fortiori, on a street controlled by electric semaphore lights, is entitled to assume that drivers on the less favored street, and particularly traffic facing a red light, will obey the law and respect his right-of-way. Indeed, it is now well settled that it is only in exceptional circumstances, where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation and care, that he will be found derelict. * * * Bourgeois v. Francois, 245 La. 875, 883, 161 So.2d 750, 753 (1964).
Both the trial court and Court of Appeal found that the collision was due to the negligence and want of care of Charley and that Mrs. Guillory was not contributorily negligent. We agree with this finding. Accordingly, plaintiffs are entitled to recover against M. J. Czarniecki and his son Charley in solido for damage to the Valiant. The liability of State Farm and Aetna, however, is the principal issue.
State Farm defends against the contention that it is liable under the omnibus clause of its policy and denies that Charley was driving the Chevrolet with the implied permission of the owner. Its counsel point to the pertinent language of the policy issued by them to Jesse G. Waters, defining those who are "insured" and entitled to policy coverage. The policy provides:
Persons insured. The following are insured under Part I:
(A) With respect to the owned automobile,
(1) the named insured and any resident of the same household,
(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other use thereof is within the scope of such permission, and * * *
Although Jesse G. Waters was the named insured, the permission and authority delegated by him to Randy for the use of the car was so broad and so free of restrictions that it may safely be said that Waters delegated to Randy whatever authority he had to grant permission to others to drive the car. This circumstance, together with the uncontested fact that the automobile was paid for by Randy and the cost of its maintenance and operation was entirely borne by him from his earnings, places Randy in the position of the named insured clothed with all of his authority and rights under the policy.
Randy, then, was fully authorized to use the car as his own. This permission carried with it the right to grant permission to others to drive and use the car. When *257 Randy loaned the car to Hans Gerteis, therefore, the operation of the car by Gerteis was, in legal contemplation, "with the permission of the named insured"; and, since he represented that the car would be used to take his mother shopping and to go to the Fairgrounds on a double date, the use of the automobile was, certainly to that extent, "within the scope of such permission".
We do not feel, and it is not seriously urged, that when Hans drove to the Western Hills neighborhood some distance away from the Fairgrounds to attend a party he went beyond the scope of the permission he had and deviated, in legal contemplation, from the use he represented to Randy that he would make of the car. This change in plans did not remove him from the definition of a person "insured" within the policy provision; nor did it mean that he was not "using such automobile with the permission of the named insured", or that the actual use thereof was not "within the scope of such permission."
Authority for such a change in plans may be considered by custom to be incidental to permission to use the car on a double date and to go to the races at the Fairgrounds. This substituted plan is also a foreseeable circumstance, especially when rain and a wet track make the initial plan unfeasible and the deviation does not subject the car to any additional danger or risk. It may reasonably be implied, therefore, that when permission was granted to Hans to go on a double date that he might drive his group elsewhere during the course of the evening. For instance, later in the evening they could be expected to go to some other locality for refreshments or the like, which young people customarily do on double dates. Unless instructed specifically to that effect, it would be unreasonable to expect Hans to adhere rigidly to the general route of travel or activity he outlined to Randy.
The implication which arises to sanction the driving to Western Hills is one which results from facts which could reasonably be foreseen as incidental to the permission granted under the circumstances. A like implication, however, does not arise that Hans would or could lend the automobile to someone else. It is a question of degree in these cases; and when Hans loaned the car to Charley, he went beyond the point where permission may reasonably be implied under the facts of this case. See Smith, The Work of the Louisiana Appellate Courts for the 1963-64 Term, Insurance, 25 La.Law Rev. 291, 381 (1965).
Though we are willing to say that driving to Western Hills was a foreseeable result of the permission Randy granted to Hans, on the basis of the facts and circumstances of the case, we are not prepared to say that it was foreseeable that Hans would give Charley permission to drive the Chevrolet. Speaking for the Court in Rogillio v. Cazedessus, 241 La. 186, 198, 127 So.2d 734, 737 (1961) Chief Justice Fournet said:
But counsel for said companies confidently declare that in other cases we have, either expressly or by denying writs to the Courts of Appeal, so extended the interpretation of "permission of the named insured" that it applies to anyone who has been given legal control of the car. With this we cannot agree. (Emphasis added.)
Randy did not know Charley. He had never given Hans permission to drive the car before, and the record does not satisfy us that Randy could reasonably foresee that Hans would lend the car to Charley. If it is customary for young people who double date to lend their cars to one another, the record does not establish this fact. And, particularly, there is no evidence indicating Randy could expect that Hans would let someone Randy did not know borrow and drive his car. We are unprepared to take judicial cognizance of a custom which would support such a finding.
Where a general permission is granted or implied, a deviation from the contemplated *258 route or distances to be traveled is more readily foreseeable than the act of a permittee in lending the automobile to another driver. We say this because ordinarily it may be understood that a person is more apt to exercise care in the selection of the driver of his car than in the selection of the route over which it is to be used by a permittee. This is a human equation based upon the inference that, generally, a delegation of authority to drive a car imposes a more onerous responsibility than an understanding concerning use or the route to be traveled by one who borrows the car of another.
For these reasons, some distinction however slight, may properly be drawn between those cases involving a route deviation and the type case where the deviation involves a change of drivers. It is this slight distinction which is relevant to the question of degree which we must resolve in this case. Since the principal contention involves a deviation from the initial permission Randy gave to Hans affecting the driver and not the route traveled by the vehicle, this case may be readily distinguished from McConnell v. Travelers Indemnity Company, 248 La. 509, 180 So.2d 406 (1965) involving a route and use variance and not a change of drivers. The older case of Parks v. Hall, 189 La. 849, 181 So. 191 (1938) may likewise be distinguished on this same basis. What is important to remember is that each case must depend upon the facts and circumstances revealed there. As the Chief Justice said in Rogillio v. Cazedessus, 241 La. 186, 198, 127 So.2d 734, 738 (1961), "[N]o useful purpose would be served in attempting to explain what the courts may have said under widely differing factual situations, in pursuing the logic of the particular rule applicable to the matter under discussion."
Thus, where an effort is made to imply permission in these cases, the realm of speculation is inevitably involved to some extent. Implying permission, as in other contractual implications, is, essentially, nothing less than a judicial extension of the terms of an obligation by reading into language a meaning which is not clearly expressed. It is, in effect, a rewriting of the contract between the parties and, a fortiori, a rewriting of the law which they have made for themselves. It is an authority to be most carefully exercised calling for a proper restraint by courts. La. Civ.Code arts. 1901, 1903.
Needless to say, neither Jesse Waters nor Randy Carroll gave Charley any express permission, and the law cannot, on the basis of this record, imply that Charley had permission from the named insured, or Randy, to drive the Chevrolet on the night in question. It follows that State Farm is not liable under its policy for the damages sued for.
Aetna's defense is also based upon the proposition that the policy it issued to M. J. Czarniecki insuring Czarniecki's automobile did not provide coverage to Czarniecki or his son Charley while Charley was driving the Chevrolet insured in the name of Jesse G. Waters. The defense is based upon the contention that Charley could not be considered as an insured because he was not driving with the permission of the owner of the Chevrolet, a defense based upon the identical factual issue advanced successfully by State Farm to support its position. The pertinent language of Aetna's policy defining the insured reads as follows:
The following are insureds under Part I:

* * * * * *
(B) With respect to a non-owned automobile,
(1) the named insured,
(2) any relative, but only with respect to a private passenger automobile or a trailer,
provided his actual operation or (if he is not operating) the other actual *259 use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, * * * (Emphasis added.)
Our decision that Charley did not have the implied permission of the owner of the Chevrolet is equally applicable and controlling here. On the basis of that finding, we could not hold that Aetna's policy provided coverage in this accident where there is no language in the Aetna policy providing broader coverage than the State Farm policy. It may be asserted that the language of the quoted clause (emphasized portion) which entitles the operator of a vehicle to be considered an insured when the operation is "reasonably believed to be with the permission of the owner" makes the Aetna coverage broader than the State Farm coverage. But this difference is not significant under the facts. The reasons we assigned for denying that Charley had the implied permission of the owner also militate against a finding that he reasonably believed he was operating the Chevrolet with the permission of the owner. Charley did not know Randy or Mr. Waters, and there is nothing in the record which could lead him to believe that they had granted him permission to drive the Chevrolet or that Hans had the authority to grant him that permission. The conclusion is, therefore, that Aetna is not liable under its policy for the damage resulting from the collision.
State Farm's and Aetna's liability to Czarniecki for attorneys fees on account of their failure to defend him and his son in this suit is also under review. Czarniecki asserts that their failure to defend was arbitrary and unreasonable and, for that reason, the contract of insurance each issued was violated, and they are liable for attorneys fees.
The State Farm and Aetna policies provide that,
[T]he company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; * * *
Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. And the insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Benoit v. Fuselier, 195 So.2d 679 (La.App.1967).
Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured. Benoit v. Fuselier, ibid.
Plaintiffs' petitions alleged that State Farm had in full force and effect its liability policy issued to Jesse G. Waters covering the 1957 Chevrolet. They also alleged that Aetna had in full force and effect its liability policy issued to Myron J. Czarniecki and that these policies provided coverage to Czarniecki for the claims asserted. Most importantly, they alleged that Charley "was driving the Chevrolet with the permission and consent of the insured within the terms of and within the meaning of the omnibus clause of the State Farm insurance policy and within the terms and meaning of the non-owned automobile clause of the Aetna Insurance policy."
These allegations, if proven, would be sufficient to establish an obligation on *260 the part of both insurers under their policies to defend the suit on behalf of Charley, who would, by reason thereof, be considered an insured under both policies, State Farm being the insurer primarily liable. Failure of the insurers to defend on these allegations, then, renders them liable for the attorneys fees and costs incurred by M. J. Czarniecki, both individually and on behalf of his son Charley, since the father is liable for the son's torts. La.Civ. Code art. 2318.
Aetna's policy, however, provides that "insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance." Based upon our analysis of the petition, the State Farm policy would provide "other valid and collectible insurance" as that term is used in Aetna's excess clause.
The question posed by these facts is whether the "excess" clause of Aetna's policy applies to the obligation to pay attorneys fees. Since the language of the "excess" clause is all inclusive and the reference to "insurance" with respect to a non-owned automobile is not limited in any way, we understand it means the obligation of the insurer to pay attorneys fees as well as its other obligations under the insuring clause of the policy.
Under this view, since Aetna's policy contains the excess clause, it is only liable where the limits of State Farm's policy are exceeded. Coverage for costs and attorneys fees in State Farms' policy being more than adequate to satisfy the claim asserted here, Aetna has no liability therefor. Maryland Casualty Co. v. Marquette Casualty Co., 143 So.2d 249 (La.App.1962); 44 Am.Jur.2d, Insurance, Sec. 1815.
The amount of damage which Tri-Wheel, Inc., and American Home are entitled to recover against Czarniecki and his son is either stipulated or not controverted, and no issue is raised on this point. Accordingly, the amount awarded by the trial court is approved.
The claim for attorneys fees cannot exceed the amount which the evidence supports, which Czarniecki's attorney stipulated as $1,250. Therefore judgment should be rendered in favor of M. J. Czarniecki, individually and as administrator of the minor Charley Czarniecki, and against State Farm Mutual Insurance Company in that amount, together with all costs of this proceeding.
For the reasons assigned the Judgment of the Court of Appeal is amended as herein set forth, and, as amended, the judgment is affirmed.
SANDERS, J., dissents with written reasons.
SANDERS, Justice (dissenting).
As the majority correctly holds, Randy Carroll was in reality the named insured under the State Farm policy. See Garland v. Audubon Insurance Company, La.App., 119 So.2d 530, as explained in Rogillio v. Cazedessus, 241 La. 186, 197-198, 127 So. 2d 734, 738. Hence, under the terms of the policy, we must look to Randy's consent to determine coverage.
Randy loaned the car to his friend, Hans Gerteis, to go on a double date. Since Randy had full knowledge that the car was to be used on a double date, at least until midnight, it was entirely foreseeable that the other boy with Hans might drive the car. Hence, since Randy imposed no restriction as to the driver, he impliedly consented to the other boy's driving. That he did not know his name does not bar this conclusion. Under the circumstances shown, it was enough that he knew the car was to be used by two dating couples.
Having concluded that the showing of consent is sufficient, I hold that the State Farm policy provides coverage under its *261 omnibus clause. I would therefore render judgment for the damages against State Farm Mutual Auto Insurance Company.
For the reasons assigned, I respectfully dissent.