595 So.2d 706 (1992)
Grace L. Strauss, Wife of Donald STRAUSS
v.
William RIVERS, State Farm Mutual Automobile Insurance Company and Republic Vanguard Insurance Company.
No. 91-CA-469.
Court of Appeal of Louisiana, Fifth Circuit.
February 18, 1992.
*707 Catherine J. Soutullo, Gretna, for plaintiffs/appellees.
Glenn B. Adams, New Orleans, for defendants/ appellants.
Before BOWES, GAUDIN and WICKER, JJ.
WICKER, Judge.
State Farm Mutual Automobile Insurance Company, a defendant, appeals a judgment awarding the Succession of William Rivers, a co-defendant and alleged insured, the costs of defending the lawsuit filed by Grace L. Strauss. The succession cross-appeals the ruling that State Farm's policy did not provide coverage. We affirm.
Mrs. Strauss was injured in an automobile accident with William Rivers in 1983. Mr. Rivers struck Mrs. Strauss from the rear while she was stopped at a stop sign, and there is no question that Mr. Rivers was at fault. Mrs. Strauss sued Mr. Rivers; his alleged insurer, State Farm; and her own uninsured/underinsured carrier, Republic Vanguard Insurance Company. State Farm denied both coverage and a defense to Mr. Rivers, and he employed his own counsel to defend him. Mr. Rivers has since died, and his succession has been substituted. The succession third-partied State Farm.
State Farm moved for summary judgment on the coverage issue; and Judge Zaccaria denied the motion, finding an issue of material fact. The case then went to trial on the bifurcated issue of insurance coverage; and the judge ruled that State Farm provided liability coverage to Mr. Rivers, since it had failed to meet its burden of proving the policy had been cancelled.
State Farm appealed; and this court dismissed the appeal on the grounds that the bifurcated trial had not resulted in an appealable judgment, annulled the judgment, and remanded the case for further proceedings. Strauss v. Rivers, 501 So.2d 876 (La.App.1987). Republic Vanguard settled Mrs. Strauss' claims and has been dismissed from the suit.
In the meantime, Judge Zaccaria had retired and four judges in succession took over the case: Richards, Collins, DiRosa (ad hoc), and McCabe. The remaining parties sought clarification concerning whether the judgment finding coverage by State *708 Farm was final or could be reconsidered by Judge McCabe. We instructed the judge to "handle as it deems proper." Rivers moved to have this previously-annulled judgment held in abeyance until the remaining issue was tried. The judge ruled that, while he would not re-hear or allow new evidence on the coverage issue, he would re-decide this issue on the existing record.
Ultimately Judge McCabe dismissed the succession's claim for indemnification against State Farm but awarded it $10,000.00 to reimburse it for attorneys fees it and Mr. Rivers had spent to defend the lawsuit. He found State Farm had continually refused to defend Mr. Rivers, although he also ruled that the car involved was no longer covered by State Farm at the time of the accident but that the insurer failed to communicate this information properly to Mr. Rivers. "It is only at this time, by this judgment, that the Court had determined that coverage did not exist. State Farm is only now released from this obligation."
The testimony before the judge was (1) the transcript and tape of an administrative hearing in the New Orleans Traffic Court on January 9, 1984, with Mr. Rivers present but not State Farm, and (2) the original trial on the coverage issue, before Judge Zaccaria on January 17, 1985, with testimony by State Farm's agent and his office manager. Both sides objected to the hearsay nature of the evidence; but the judge admitted both, apparently believing that this balanced out any possible prejudice.
There were also certain documents placed into evidence. However, the transcript of the second hearing along with the court reporter's notes are unavailable.
Catherine Schexnayder, Bob Harrold's office manager, testified that she had handled Mr. Rivers' insurance since 1979. He had a policy on his 1971 Buick that covered it through July 14, 1983. On April 6, 1983, he called the office because he had acquired an additional car, a 1975 Buick. He told her he was getting rid of the 1971 Buick and that the 1975 wouldn't be a second car. He asked to transfer coverage to the 1975 Buick. Ms. Schexnayder told him that he had only thirty days of free coverage on the old car because State Farm was now covering the 1975 Buick and that he should mark his calendar and if the car wasn't sold in about twenty-five days, he should come in and make another application. Then, as was State Farm's practice, she made a policy change request and sent it to the regional office for action. The regional office sent a new declarations page on April 13th or 14th in a policy jacket showing that the 1971 was no longer covered. The new coverage had the same number as the old except for the last letter, which was advanced every time there was a change in coverage.
Ms. Schexnayder further testified that the next time she heard from Mr. Rivers was after the accident on May 26, 1983. He said, "Ms. Kate, I know I only have thirty days coverage, but I've been involved in an accident. Can you do something to help me? Is there any way you can cover me?" She testified he was almost in tears and told her he had been in the hospital and didn't have a chance to sell the 1971 Buick. She told him she could do nothing for him. She did admit that she didn't call Mr. Rivers when the thirty-day period was almost up, but she testified that it was not State Farm's practice to do so.
Mr. Harrold, State Farm's agent, testified that he had Mr. Rivers' auto, homeowner's, and flood insurance. He never spoke to Mr. Rivers about the coverage change. On cross-examination he testified that it isn't necessary to surrender a policy to effect cancellationa written request to cancel is sufficient. In Mr. Rivers' case, he got no written request to either change or cancel coverage.
The administrative hearing was to determine if Mr. Rivers had violated La.R.S. 32:851 and 861. His driving privileges had already been suspended and his car registration revoked because of his inability to prove liability coverage on his 1971 Buick at the time of the accident. He testified that he thought he had coverage following his purchase of a newer, 1975 Buick:

*709 When I got home, the first thing I did, I called State Farm and I told them I had just brought [sic] this new car, 1975 Buick, and I told them I wanted it covered with insurance, just like I had on the 1971, and I told them and they said all right. I told them, I said now I want the '71 so where if somebody comes to buy it, they'd be able to run it around the block a couple of times, I said, uh, to demonstrate it to somebody who came around to buy it. They said yes, sir, you've got that. Miss Kate, there, with Bob Harrold's office was the one that I talked to, and I thought both vehicles were covered.
He further testified that he received no clear statement from State Farm that they had dropped coverage on the 1971 Buick. He did admit, however, that he had not paid State Farm any additional money for the 1975 Buick and that he had the 1971 Buick for sale and he wanted coverage so that someone could take it two or three blocks down the street to try it out. He believed that the $61.00 balance showed on the new policy was to cover both cars until the policy expired in July.
The declarations page sent to Mr. Rivers, dated April 13, 1983, and countersigned by Mr. Harrold, showed an additional premium due of $61.33. In the lower left was the language "Replaced policy XXXXXXX-XX C 71 Buick." The policy furnished coverage for "the use, by an insured, of a newly acquired car ..." A newly acquired car by definition is one which replaces your car or is an added car if (1) State Farm insures all your other cars, (2) you tell State Farm about the car within thirty days, and (3) you pay any additional premium due. State Farm's internal document, the policy change request, notes "only 30 days coverage" in Ms. Schexnayder's handwriting.
State Farm complains of three alleged errors: (1) the judge should not have found a duty to defend absent coverage, (2) the judge awarded attorney's fees without proof of the cost of defense, and (3) the judge awarded a penalty in excessive attorney's fees for State Farm's failure to defend. The succession also complains of errors: (1) the judge should not have retried the coverage issue, (2) the judge should have found that coverage existed, (3) the judge should have awarded damages against State Farm, and (4) the judge should have awarded more in attorney's fees. We disagree with both parties, believing that the judge committed no error of law or facts.

DUTY TO DEFEND
The failure of an insurer to defend renders it liable for the expenses incurred by the insured, including reasonable attorney's fees. The scope of the duty of defense is greater than that of the duty to pay. The duty to defend is determined by the allegations of the petition and not by the outcome of the suit. "[W]here the petition alleges facts which would place the claim within the coverage of the policy, the insurer cannot avoid the duty to defend upon its own determination that there is no coverage...." Smith v. Insurance Co. of State of Pennsylvania, 161 So.2d 903, 918 (La.App. 1st Cir.1964), writ refused 246 La. 344, 164 So.2d 350 (La.1964), (citations omitted). In this case, Mr. Rivers was a named insured; and the petition alleges him to be the driver and owner of a covered vehicle and at fault in the accident which damaged Mrs. Strauss. Accord: American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969); Dugas Pest Cont. v. Mut. Fire, Etc., Ins. Co., 504 So.2d 1051 (La.App. 1st Cir.1987).

COVERAGE
In the original appeal this circuit annulled and set aside the earlier judgment. It remanded the case for further proceedings, without limiting what those proceedings might be. 501 So.2d 876 (1987). In denying the motion for clarification this circuit authorized the judge to proceed as he deemed proper. We believe, consequently, that he had the right and jurisdiction to consider and rule on the entire case before him. We are not aware of statutory or jurisprudential prohibitions against the judge's reconsideration of the evidence; and we believe that his ruling achieves substantial justice between the parties in this difficult, long-pending case. *710 The case cited by the succession, Collins v. Slocum, 317 So.2d 672 (La.App. 3rd Cir. 1975), writ refused 321 So.2d 362 (La.1975), is distinguishable in that the Third Circuit meant to hold the judgment below in abeyance pending remand for trial of the remaining issues.
It is unreasonable to expect State Farm to cover an additional car for an indefinite period of time without the payment of an additional premium to cover the added risk. The thirty-day grace period implied by the policy was a reasonable one; and it was unreasonable for Mr. Rivers to expect more, especially when Ms. Schexnayder specifically told him coverage was limited to thirty days. If he needed additional coverage due to the delay in selling the 1971 Buick, he could easily have added it.

DAMAGES AND PENALTIES
Because of our ruling with regard to the lack of coverage, it is unnecessary to consider what damages or penalties the succession might have been entitled to. We do note that the notice provisions of either the policy or La.R.S. 22:636.1 do not come into play since Mr. Rivers' policy was neither cancelled nor terminated. Coverage was simply transferred, at his request, from one car to another.

ATTORNEY'S FEES
The only evidence in the record of the value of the attorney's fees incurred by Mr. Rivers and his succession is his attorney's statement and, of course, the amount and complexity of the work as reflected by the pleadings and transcript. Parts of the record are missing, but we can see that this proceeding has been pending for eight years; there have been many motions both in the trial and appellate court; there were two trials and five trial judges, and more than once the new judge had to be brought up to date in pre-trial conference; and this is the second appeal. According to the attorney's statement, the costs as of February 1990 were $1,064.00; attorney time expended was 337.25 hours as of February 1990; and staff support time expended as of February 1990 was 283.25 hours.
Our review of the record and appreciation for the extent of legal services convinces us that the judge's award of $10,000.00 in attorney's fees was not clearly wrong, although he did not articulate any specific findings with regard to the fees. We decline to reduce or eliminate the award, as urged by State Farm, or increase it, as urged by the succession.
We affirm in all respects the judgment dismissing the third-party demand of the Succession of William Rivers against State Farm Mutual Automobile Insurance Company and awarding the Succession of Williams Rivers $10,000.00 in attorney's fees.
AFFIRMED.