653 So.2d 1327 (1995)
ALLSTATE INSURANCE COMPANY
v.
Sam ROY d/b/a Southern Man Maintenance Company and Commercial Union Insurance Company.
No. 94-CA-1072.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
Writ Denied June 16, 1995.
*1329 Mary G. Erlingson, Baton Rouge, for plaintiff-appellee Allstate Ins. Co.
Donnie L. Floyd, Baton Rouge, for intervenors-appellees A.C. Hodges and Tammy Hodges.
John W. Perry, Jr. and Dawn T. Trabeau-Mire, Baton Rouge, for defendant-appellant Commercial Union Ins. Co.
Steven E. Adams, Baton Rouge, for defendant-appellant Sam Roy d/b/a Southern Man Maintenance Co.
Before FOIL, WHIPPLE and KUHN, JJ.
KUHN, Judge.
After payment to a homeowner for fire loss, the insurer asserted subrogation rights against defendants, the installer of a furnace and its commercial general liability ("CGL") insurer. The CGL insurer denied liability, maintaining that coverage under the policy was excluded under the completed operations hazard exclusion and declined to defend its insured. Subsequently, the homeowner intervened in the lawsuit and the installer filed a cross claim against its CGL insurer seeking expenses and costs of defense. After a trial limited to the issue of coverage, the trial court determined that the installer's CGL policy provided coverage and that the insurer owed a duty to defend. We reverse.

Facts
According to the petition of the plaintiff-appellee, Allstate Insurance Company ("Allstate"), its insured, A.C. Hodges, contracted with the defendant, Sam Roy d/b/a Southern Man Maintenance Company ("Roy") for the installation of a furnace. Allstate also named appellant, Commercial Union Insurance Company ("CU"), the CGL insurer for Roy, as a defendant. On December 4, 1987, a fire originated near the roof of the Hodges' home in Gonzales, Louisiana, due to the negligent and improper installation of the furnace. Allstate particularly alleged that Roy failed to properly install the furnace, failed to extend the vent stack of the furnace through the roof, failed to use the proper size vent stack, and failed to properly fit the vent stack. Subsequently, by amended petition, Allstate added an allegation that Roy knew or should have known of the problems with the furnace. Also, Allstate alleged that Roy should have warned the Hodges that the *1330 furnace ought to have been equipped with a safety device to shut down the unit in order to prevent the igniting of a fire.
Allstate's insured intervened in this lawsuit claiming to have sustained damages in excess of the proceeds received for the fire loss.[1] Roy filed a cross claim against CU seeking the expenses of defending the lawsuit and all costs.
CU denied coverage, arguing that the allegations contained in the petition fell squarely within the completed operations hazard exclusion of the CGL policy and refused to provide Roy with a defense.[2] After a trial on the issue of coverage, without assigning reasons, the trial court signed a judgment holding that CU did provide coverage and owed Roy a defense.[3] The parties entered into a stipulated judgment on November 4, 1993, which made the judgment finding coverage and a duty to defend final and which assessed damages. In its sole assignment of error, CU asserts that the trial court erred in holding (1) that the CGL policy provided coverage for Roy's acts in negligently installing the furnace into Hodges' home and (2) that it owed a duty to defend its insured.

Coverage
Allstate asserts that Roy purchased the CGL policy to cover hazards that he might incur in his line of business. The covered hazards are described on the front page of the policy as follows:
Premises-Operations
Air Conditioning, Heating or refrigeration systems or combined heating [and] air conditioning systems includ[ing] duct work and piping-installation, servicing or repair includ[ing] shop [and] retail stores or display rooms[.]
According to the allegations contained in Allstate's petition, the property damage Hodges suffered was the result of Roy's failure to properly install the furnace.
CU maintains that coverage for any negligence in workmanship that Roy may have assumed when he contracted with Hodges is excluded under the terms of the policy. The general exclusions portion of the policy that CU relies on provides in pertinent part:
This insurance does not apply:
(a) to liability assumed by the insured under any contract or agreement except an incidental contract;[4] but with respect to bodily injury or property damage occurring while work performed by the named insured is in progress this exclusion does not apply to a warranty that such work will be done in a workmanlike manner. (Emphasis deleted.)
The policy defines "property damage," in pertinent part, as "physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom...."
An insurance contract is the law between the parties, and every provision therein must be construed as written. Thibodeaux v. Doe, 602 So.2d 1076, 1078 (La. App. 1st Cir.), writ denied, 605 So.2d 1377 (La.1992). Words used in an insurance contract *1331 are to be understood in their usual and common signification. Nickels v. Guarantee Trust Life Ins. Co., 563 So.2d 924, 926 (La. App. 1st Cir.1990). When the policy wording is clear and does not lead to absurd consequences, the agreement must be enforced as written. La.Civ.Code art. 2046; Dauthier v. Pointe Coupee Wood Treating Inc., 560 So.2d 556, 557 (La.App. 1st Cir.1990). Because the contract between Roy and Hodges was not an incidental contract and because the property damage by fire to Hodges' home did not occur while Roy was installing the furnace, but occurred several months after the furnace had been connected to an electrical source, we find that any liability for the negligence of Roy's workmanship assumed pursuant to his contract with A.C. Hodges was excluded from coverage under the plain language of general exclusion (a).
Allstate argues that the property damage that Hodges suffered arose out of Roy's negligence in installing the furnace and therefore was a covered risk. CU maintains that the terms of the CGL policy purchased by Roy did not include coverage for property damage occurring after the installation process was finished as evidenced by the completed operations hazard exclusion. We agree.
The coverage section of the policy defines the completed operations hazard as including:
bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed. (Emphasis deleted.)
The policy also provides, in pertinent part:

EXCLUSION

(Completed Operations Hazard and Products Hazard)
It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Product Hazard. (Emphasis deleted.)
Under this language, the policy excludes the work of the named insured if the property damage arose out of that work or any parts, materials or equipment furnished in connection with that work if the operations were completed.
The record and the allegations of Allstate's petition establish that Roy furnished and installed the furnace. During the installation, he modified the upper lip of the roof jack (a portion of the heating ventilation system) by positioning the vent pipe in a more upright vertical position than the manufacturer's instructions directed. The furnace was connected to an electrical source and capable of operation approximately three months prior to the fire on December 4, 1987. Therefore, the losses sustained by Hodges, occurring *1332 subsequent to the completion of the installation of the furnace, are not covered under Roy's CGL policy. See Nash v. Western Casualty and Sur. Co., 406 So.2d 176 (La. 1981); Aetna Casualty & Surety Co. v. Rothman, 331 So.2d 81 (La.App. 1st Cir.1976).
Allstate's amended petition alleges that Roy's negligence included not only his improper installation of the furnace, but also his failure to warn Hodges of the inherent danger of installing a modified system which was complicated by his failure to procure a furnace system equipped with an automatic shut-down feature in the event the unit became overheated. Allstate argues that the resulting damages from this failure to warn were covered under the CGL policy.[5]
The coverage provided in CU's CGL policy was designed to cover Roy's liability for losses which occurred during the actual period of installation. Because Roy did not purchase completed operations hazard coverage, losses which occurred subsequent to the completion of the installation of heating systems are not covered. The fire damage allegedly arising out of Roy's failure to warn and which occurred several months after the furnace had been installed and after the unit had been connected to an electrical source is excluded by the completed operations hazard exclusion. See Moreau v. Moran, 465 So.2d 202 (La.App. 3rd Cir.1985); State Farm Fire & Casualty Co. v. Avant, 404 So.2d 1311 (La. App. 2nd Cir.1981).
Allstate contends that the completed operations hazard exclusion is ambiguous because an endorsement that Roy selected was entitled "Broad Form Property Damage Endorsement (Including Completed Operations)." Allstate maintains that it was reasonable for Roy to conclude that he had purchased completed operations coverage because of the title of the endorsement and the payment of an additional premium of $33.00.
The Broad Form Property Damage Endorsement (Including Completed Operations) included the following language:
A. The exclusions relating to property damage to ... (2) work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced with the following exclusions (y) and (z):
. . . . .
(z) with respect to the completed operations hazard and with respect to any classification stated above as "including completed operations", to property damage to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith. (Emphasis deleted.)
CU, relying on exclusion (z), asserts that the policy clearly excludes completed operations even for any classification which states "including completed operations." CU's position is that prior to the addition of this endorsement, Roy's CGL did not cover work performed "by or on behalf of the named insured." When the Broad Form Property Damage Endorsement (Including Completed Operations) was included in the CGL policy, Roy received broader coverage. Work performed "on behalf of the named insured" was no longer excluded so that, for example, a subcontractor of Roy's would be covered under his policy after the endorsement was added.
An insurance contract is construed as a whole, and one part of the contract is not construed separately at the expense of disregarding other sections or provisions. Central Louisiana Elec. Co., Inc. v. Westinghouse, 579 So.2d 981, 985 (La.1991). Reading the various provisions of Roy's CGL policy *1333 relating to completed operations hazard and property damage as a whole, we find that there is no ambiguity in the policy language or terms.
Accordingly, we hold that the CGL policy issued by CU unambiguously excluded coverage to Roy for his negligence in improperly installing a furnace and in failing to warn of the availability of furnaces equipped with a safety device.

Duty to Defend
The duty to defend is broader than an insurer's liability for damage claims. This duty is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253, 259 (1969); LaFever v. Whitely, 613 So.2d 1007, 1008 (La.App. 1st Cir.), writ denied, 614 So.2d 64 (La.1992). If, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Allegations in the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured. Id.
Carried to its logical conclusion, the Czarniecki analysis would produce inequitable results in cases such as the case at hand. It would appear that an insurer would be required to provide a defense where the undisputed facts obviously exclude coverage in a suit simply because the allegations of the petition omit crucial, undisputed facts. We do not believe that this was the intent of Czarniecki.
In the present case, the undisputed facts are that the installation process had been completed several months before December 4, 1987, when the fire in Hodges' house occurred. These undisputed facts were established by Roy's deposition testimony taken on May 5, 1989. Allstate's petition alleges that a fire occurred and that Roy's installation was a factor in the cause of that fire. The failure to allege the date of installation results in allegations that do not unambiguously exclude coverage. However, when read in conjunction with the undisputed facts regarding the work performed by Roy, the allegations do clearly exclude coverage.
The petition does not allege the time that Roy concluded installation of the furnace relative to the date of the fire. The petition can be read to allege that the fire occurred while Roy was in the process of installing the furnace. If the evidence supported such a conclusion, coverage would have been provided to Roy under this policy. Because the allegations taken as true would result in liability to Roy, CU at least initially owed Roy the duty to defend.
While the duty to defend may exist in circumstances where it is apparent that there is no coverage, it is predicated on some possibility that the allegations, when supported by competent evidence, can be proven. Even if all the allegations of Allstate's petition were supported by competent evidence, the undisputed facts could not create a situation that would trigger coverage. Accordingly, we find that the duty CU owed to Roy to defend him in the lawsuit filed by Allstate terminated once Roy established through his deposition testimony the undisputed facts as to the date of installation and the date of the fire.
After our review of the record and in appreciation of the extent of the legal services necessary to defend this suit, we award to Roy $500.00 for CU's failure to defend from the date of the filing of the petition through the date of Roy's deposition testimony. La.Code Civ.Proc. art. 2164. See Strauss v. Rivers, 595 So.2d 706, 709 (La. App. 5th Cir.1992).

Conclusion
Based on the foregoing reasons, we reverse the judgment of the trial court. We render judgment in the amount of $500.00 to *1334 Roy for CU's failure to defend from the date of the filing of Allstate's petition through the date of Roy's deposition testimony. Allstate is assessed three-fourths of all costs of this appeal, with the remaining one-fourth assessed against Roy.
REVERSED AND RENDERED.
NOTES
[1] A.C. Hodges died after the filing of the petition of intervention. The Estate of A.C. Hodges was substituted as intervenor.
[2] CU maintained that it did not provide coverage to Roy under the facts alleged in the original and amended petitions in a motion for summary judgment which was denied by the trial court. A reconsideration of that motion was also denied.
[3] In Commercial Union Insurance Company v. Allstate Insurance Company, 93-CM-1895, this court dismissed CU's unlodged appeal from an interlocutory judgment which did not show the requisite irreparable injury.
[4] The policy defines an "incidental contract" as:

any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) side track agreement, or (5) elevator maintenance agreement[.]
[5] The stipulated judgment entered into by the parties and signed by the trial court on November 4, 1993, states in pertinent part, "Roy's negligence in improperly installing the heat venting system was the sole cause of the December 4, 1987, house fire and the resulting damages of Allstate and [Intervenor Hodges]." When Allstate stipulated to the legal conclusion that Roy's negligence in improperly installing the furnace was the sole cause of the damages sustained, it precluded a finding of negligence based on any other cause including a failure to warn.