316 So.2d 878 (1975)
Julius R. MANUEL, Plaintiff-Appellant,
v.
Joseph SHAHEEN et al., Defendants-Appellees.
No. 5020.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1975.
*879 Reuvan N. Rougeau, Lake Charles, for plaintiff-appellant.
Brame, Bergstedt & Brame by Joe A. Brame, Camp, Carmouche, Palmer, Carwile & Barsh by Edgar F. Barnett, Philip J. Shaheen, Jr., Lake Charles, for defendants-appellees.
Before HOOD, CULPEPPER, and WATSON, JJ.
HOOD, Judge.
Julius R. Manuel claims damages for personal injuries sustained by him when he collided with a wharf while water skiing behind a boat being operated by Jake Shaheen. The original defendants were Joseph Shaheen, Jake Shaheen and Home Insurance Company. The suit was dismissed as to Home Insurance, and Zurich Insurance Company was impleaded as a party defendant. A summary judgment was rendered thereafter by the trial court dismissing the suit as to Zurich. Plaintiff appealed. We affirm.
The issues presented are (1) whether there is a genuine issue of fact as to the ownership of the boat which was involved in the accident, and (2) if not, whether that boat was owned by Joseph Shaheen or by Clay's Marine, Inc., the latter being insured by Zurich, when the accident occurred.
The judgment of the trial court was based on the pleadings, answers to interrogatories, affidavits, depositions and documentary evidence.
*880 The receivable evidence shows that prior to June 5, 1973, Joseph Shaheen owned a 16-foot "Cathedral" boat, powered by a 110 horsepower outboard motor. On or shortly before that date he authorized his 19-year old son, Jake Shaheen, to purchase a new boat and motor from Clay's Marine, and to trade in the old Cathedral boat and motor for the new rig. Pursuant to that authorization, young Shaheen on June 5 selected and purchased from Clay's Marine a new 16.7-foot "Boston Whaler" boat and a new 85 horsepower Mercury outboard motor. They agreed on the price and the amount which was to be allowed for the "trade-in" of the old boat and motor. Clay's Marine picked up the old Cathedral boat and motor on or about June 5, and neither Joseph nor Jake Shaheen have seen or possessed the old boat and motor since that time. The new Boston Whaler boat, with a new 85 horsepower outboard motor, was delivered to Jake Shaheen on June 6 or 7, 1973, and it has been in the possession of Joseph and Jake Shaheen and has been used by them regularly since that time.
On June 5, Clay's Marine invoiced Joseph Shaheen for the purchase price of the new boat, motor and equipment, and on June 19, 1973, Joseph Shaheen paid to Clay's Marine the full amount due as shown on that invoice.
On June 29, 1973, plaintiff Manuel sustained personal injuries as the result of the above mentioned accident which occurred while he was water skiing behind the new Boston Whaler boat being operated by Jake Shaheen. Manuel instituted suit on December 4, 1973, against Joseph Shaheen, Jake Shaheen and Home Insurance Company to recover damages, and in his original petition he alleged that the Boston Whaler boat was owned by Joseph Shaheen at the time the accident occurred, and that the latter was insured by Home Insurance. On motion of Home Insurance, a summary judgment was rendered on March 25, 1974, dismissing the suit as to that defendant on the ground that the policy which it had issued to Shaheen did not cover claims for damages resulting from the operation of the boat involved in the accident. No appeal was taken from that judgment.
About the time that judgment was rendered, plaintiff amended his petition to allege that on June 5, 1973, Joseph Shaheen obtained the boat and motor which later was involved in the accident from Clay's Marine on a 30-day "try-out basis," with the understanding that the sale would be consummated later if the boat and motor proved to be satisfactory. He asserts in his amended pleadings that the sale had not been consummated by the time the accident occurred, and that the boat and motor were still owned by Clay's Marine, insured by Zurich, at the time plaintiff was injured. He took the position in the trial court, and he argues here, that the sale was made with a suspensive condition, that the condition had not taken place by the time the accident occurred, and that the boat and motor thus were still owned by Clay's Marine at that time. He contends that the operator of the boat was an insured under the policy which Zurich had issued to Clay's Marine, and that he is entitled to recover from that insurer.
Zurich filed a motion for summary judgment, and after a hearing the trial court rendered judgment on December 12, 1974, dismissing the suit as to Zurish. Plaintiff has appealed from that judgment.
Plaintiff contends that there is a genuine issue of material fact relating to the ownership of the boat at the time of the accident, and that accordingly the summary judgment appealed from should be reversed and the case remanded for trial on its merits.
To support that argument, Manuel relies on an affidavit executed by Joseph Shaheen, in which the affiant states that on June 5, 1973, Clay's Marine let the Boston Whaler boat out on a 30-day "try-out basis," so that Shaheen could determine *881 whether he wanted to purchase it. The affidavit recites that Shaheen had not decided whether he wanted to purchase the boat by the time the accident occurred, that "title was not transferred and a bill of sale not completed as of the date of June 29, 1973," and that no document or instrument of any kind, in fact, has ever been signed transferring the new boat to him, or transferring the old Cathedral boat and motor to Clay's Marine. Shaheen stated in that affidavit that he still owned the old Cathedral boat and motor, and that he "was merely furnished the use and benefit of the 16.7 Boston Whaler and motor on a contingent basis."
The above affidavit, on its face, indicates that an issue of fact exists as to the ownership of the boat and motor at the time of the accident. The record, however, contains the testimony of Joseph Shaheen in two separate depositions, in both of which he testified that he was not present when his son purchased the boat and motor, that he has no personal knowledge of the terms of the sale, and that his statements in the affidavit relating to the conditions of the sale were based solely on information he obtained later from his son. In those depositions, Shaheen confirmed the fact that he received the new boat and motor from Clay's Marine on or shortly after June 5, 1973, that he traded in his old boat and motor for the new one at that time, that he paid for the new boat and motor on June 19 (10 days before the accident occurred), and that the boat and motor which he acquired from Clay's Marine were still in his possession and were being used by him when the last deposition was taken on August 30, 1974. He explained that the statement in his affidavit that the sale of the new boat had not been consummated before the accident occurred, was based solely on the fact that he had received no written transfer of title to the boat and motor by that time. The law, of course, does not require that the sale of a boat or motor be evidenced by a written document. LSA-C.C. art. 2441.
Jake Shaheen testified by deposition that the 85 horsepower motor which he acquired on June 5 was the largest outboard motor Clay's Marine had in stock at that time, and that although he preferred a bigger motor he accepted that one with the understanding that he could trade it in on a larger motor as soon as Clay's Marine got some larger ones in stock. According to young Shaheen, the agreement was that if he decided to trade it in the would have to pay the difference in the prices of the two motors. He stated that the Boston Whaler boat was the boat he wanted, and that he never considered trading it in for another one. He also testified that, regardless of his own desires, his father would not let him trade in the 85 horsepower motor for a larger one.
The trial judge found that the sale was completed on June 5, 1973, and that the new boat and motor thus were owned by Joseph Shaheen at the time the accident occurred later that month. He concluded that the agreement between Shaheen and Clay's Marine that the 85 horsepower motor could be traded in later for a larger one was a "resolutory condition" relating only to the motor, that title to the boat and motor nevertheless became vested in Shaheen on June 5, 1973, and that the resolutory condition never took place. Since he determined that the boat and motor were not owned by Clay's Marine at the time of the accident, he rendered judgment dismissing the suit as to the latter's insurer, Zurich.
A motion for summary judgment is not a substitute for trial, and it may not be resorted to when there is a genuine issue of material fact. Upon trial of a motion for summary judgment, the burden rests upon the mover to show convincingly that there exists no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. arts. 966 and 967; Fontenot v. Aetna Insurance Company, 225 So.2d 648 (La.App. 3 Cir. 1969).
*882 Article 967 of the Code of Civil Procedure provides that affidavits supporting or opposing motions for summary judgment "shall be made on personal knowledge," and that they "shall set forth such facts as would be admissible in evidence." We have pointed out that the affidavit executed by Joseph Shaheen, on which plaintiff relies, contains several statements which were not within the personal knowledge of the affiant and which would not be admissible in evidence. We agree with defendant Zurish that those statements may not be considered in determining whether a summary judgment should be rendered. The additional statements of fact contained in the affidavit, as explained in the depositions of Joseph Shaheen, tend to confirm rather than contradict the other evidence which is in the record.
We find, as the trial judge apparently did, that there is no dispute as to any material fact in this case. Joseph Shaheen, through his son, purchased from Clay's Marine a Boston Whaler boat and an 85 horsepower motor on June 5, 1973. The parties agreed on the boat and motor to be purchased, and on the price which was to be paid for them. They also agreed that Shaheen could trade the motor in for a larger one at a later date, if he desired to do so, by paying the difference in the purchase prices of the two motors. The boat and motor were delivered to Shaheen on June 6 or 7, 1973, and the purchase price was paid in full on June 19. Shaheen has had continuous possession of the boating rig since the date on which it was delivered, and he has used it regularly since that time. He has never decided or sought to trade in the 85 horsepower motor for a larger one. The accident resulting in injuries to plaintiff occurred on June 29, 1973, after the parties had agreed on the object to be purchased and the price to be paid for it, and after the new boat and motor had been delivered and the agreed purchase price had been paid.
Article 2456 of the Louisiana Civil Code provides that a sale is considered to be perfect between the parties "as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
In the instant suit, the parties agreed on the object and the price which was to be paid for that object on June 5, 1973. Applying the provisions of the cited article of the Civil Code, it is apparent that the sale was perfected on that date, and that Joseph Shaheen was the owner of the boat at the time the accident occurred.
Plaintiff argues that the sale was not to be perfected until the expiration of the 30-day try-out period, and that it thus was made on a suspensive condition which had not occurred by the time of the accident. We do not agree with that argument. LSA-C.C. art. 2043 defines an obligation contracted on a suspensive condition as one which "can not be executed till after the event." In the instant suit, we think the sale of the boat and motor was "executed" on June 5, 1973, when the parties agreed on the object and the price. Aside from the fact that the sale was completed on that date the evidence shows that the boat and motor were actually delivered to the purchaser and were paid for before the 30-day period expired and before the accident occurred. Our conclusion is that the sale was not contracted on a suspensive condition.
We make no determination as to whether the sale was made on a "resolutory condition," because such a finding is immaterial to the outcome of the case. LSA-C.C. art. 2045 provides that a resolutory condition "does not suspend the execution of the obligation," but it only obliges the creditor to restore what he has received, "in case the event provided for in the condition takes place." The sale thus became effective when the parties agreed on the object and the price, and the evidence shows that the so-called resolutory *883 condition (that is, the decision of the purchaser to trade in the 85 horsepower motor for a larger one) did not occur. Shaheen thus must be held to have been the owner of the boat at the time the accident occurred whether the sale was or was not made on a resolutory condition.
Our ultimate conclusion is that the ownership of the above mentioned boat and motor was transferred from Clay's Marine to Joseph Shaheen on June 5, that Clay's Marine thus was not the owner of those items when plaintiff was injured on June 29, 1973, and that the trial judge correctly dismissed the suit insofar as it was directed against Zurich Insurance Company, the insurer of Clay's Marine.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.